ORA T. SHOHONEY v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Division One, November 30, 1910.

1. **EXCESSIVE VERDICT: No Evidence.** Where there is no bill of exceptions, and hence no evidence and no motion for a new trial raising the point of excessiveness which can be considered on appeal, it will not be held that a verdict for $15,000, in a personal injury case, for the loss of a foot by a switchman, was excessive, although on a former trial another jury fixed the damages at $5,000. A mere difference of verdicts is not evidence, on the record proper, that the last one was excessive; and a verdict regular on its face and within the lines of the petition will not on appeal be assumed to be excessive, absent

all evidence of the time lost and the extent of plaintiff's pain and anguish.

2. MOTION TO STRIKE OUT REPLY: Appeal: No Bill of Exceptions: Illegal Contract. To the petition of plaintiff, suing for damages for personal injuries sustained while working as a switchman, defendant filed answer, alleging that defendant had executed a contract releasing it, in consideration of his employment, from all liability for any injury received by him while in its employ and due to the negligence of any other employee. To that answer plaintiff replied, denying all new matter, and alleging the contract was void because in express violation of a statute, and thereupon defendant filed a motion to strike out this part of the reply, which was overruled, and defendant appeals on the record proper only, filing no bill of exceptions, and assigning this ruling on its motion as error. *Held*, first, that the legal effect of the court's ruling on the motion was to leave the petition, answer and reply intact, and the issues to be thrashed out at the trial, and hence defendant was left free to offer the contract in evidence, plaintiff to raise its illegality, by objecting to its introduction or later by a motion to exclude, or by an instruction, and defendant to challenge by an instruction the constitutionality of the statute interdicting such contracts; and there being no bill of exceptions, it will be assumed on appeal that at the trial such steps were taken, and it will be presumed that the court proceeded without error, and since defendant was left an open road to maintain in an orderly way its position on the issues framed, that presumption continues until it establishes the contrary; and, *second*, the motion to strike out not being aimed at the general denial of the reply, the question of the illegality of the contract remained in the case for determination, and the merits of the case were not affected by the court's refusal to sustain the motion to strike out.

3. ———: ———: ———: ———: Abandonment: Constitutional Question. Even though it be conceded that a motion to strike out that part of the reply alleging the contract of release pleaded in the answer was in express violation of a statute and therefore void, is a part of the record proper, yet if defendant raised the constitutionality of the statute only by such motion, and did not offer the contract in evidence, or, if that was done, did not in some proper way challenge the court's ruling thereon and the constitutionality of the statute, and failed to file a bill of exceptions, it will be held on appeal to have waived its constitutional point by abandonment.

4. ———: ———: ———: ———: Not Preserved for Review. A motion to strike out that part of plaintiff's reply which raised the issue or the constitutionality of a statute, can-

not be preserved for review on appeal except by saving an exception to the overruling of it, and by calling the court's attention to its own error in a motion for a new trial, and by preserving both motions in a bill of exceptions, unless the motion to strike out the pleading was essentially a demurrer and the ruling thereon disposed of the case.

5. **FELLOW-SERVANT ACT:** Liberty to Contract: Releasing Company from Liability for Negligence. Liberty to contract is not without reasonable limitations. The welfare of the community may require that bounds be set to the liberty of one *sui juris* to contract. A railroad company cannot in advance, in consideration of employment, contract with its employees for the waiver and release of the liability imposed by statute upon every railroad company doing business in this State to respond in damages for personal injuries due to the negligence of a fellow-servant; and a contract in contravention of the statute is void, and is no defense to an action brought by an employee of a railroad company for damages done to him in consequence of the negligence of a fellow-servant. The Fellow-Servant Act of 1897 (now Sec. 5437, R. S. 1909), making void a contract absolving a railroad company from liability to an employee for personal injuries due to the negligence of a co-employee, is constitutional.

Appeal from Grundy Circuit Court.—*Hon. Jno. P. Butler*, Judge.

Affirmed.

*J. G. Trimble, Hall & Hall* and *Willard P. Hall* for appellant.

(1) The motion to strike out portions of reply was in effect a demurrer thereto, and should be so treated, and therefore a bill of exceptions was not necessary to preserve said motion or the court's action thereon. Those things are all matters of record, are reviewable without any bill of exceptions, and an exception to such judgment is out of place in the record proper or in the bill of exceptions. Meissner v. Equipment Co., 211 Mo. 112; Mallinckrodt v. Nemnich, 169 Mo. 388; Dysart v. Crow, 170 Mo. 275. Under the provisions of our code, motions to strike out may be used

against "irrelevant or redundant matter" in a pleading (R. S. 1899, sec. 612), or against a pleading guilty of duplicity (R. S. 1899, sec. 613). Such motions can also be used against pleadings improperly filed, for any reason. But in Missouri such motions have also been used, in practice, from time immemorial, for the purposes and in the place of demurrers, to test the sufficiency in law of matters pleaded in petition, answer or reply. Sapington v. Jeffries, 15 Mo. 628; Niedlet v. Wales, 16 Mo. 214; Barley v. Cannon, 17 Mo. 595; Ming v. Suggett, 34 Mo. 364; Phillips v. Evans, 38 Mo. 305; Howell v. Stewart, 54 Mo. 400; Paddock v. Somes, 102 Mo. 226; Mumford v. Keet, 71 Mo. App. 535. The consequence is that in Missouri a motion to strike out a pleading, in legal effect, often is the same as a demurrer. Austin v. Loring, 63 Mo. 19; Paxson v. Talmage, 87 Mo. 13; Jones v. Manly, 58 Mo. 559; Mumford v. Keet, 71 Mo. App. 535; Asphalt Co. v. Benz, 81 Mo. App. 246; Bick v. Dry, 134 Mo. App. 589. This is true in other jurisdictions where a motion to strike out is used for purposes of a demurrer. Camp v. Allen, 12 N. J. L. 1; 31 Cyc. 619; 6 Ency. Pl. and Pr. 331. Wherever a motion to strike out is permitted to be, and in fact is used, to test the sufficiency in law of the allegations of a pleading, then the motion in legal effect is a demurrer, and is to be treated as such and "governed by the law applicable to demurrer." Mumford v. Keet, 71 Mo. App. 536. In such case the motion to strike out and the ruling of the court on it are a part of the record, and may be reviewed on appeal without a bill of exceptions. Bick v. Dry, 134 Mo. App. 589; Asphalt Co. v. Benz, 81 Mo. App. 246. (2) The contract of release pleaded by defendant was neither opposed to public policy nor prohibited by any valid statute. In other words the statute prohibiting said release was unconstitutional and void. Griffiths v. Dudley, 9 Q. B. D. 357; O'Maley v. Gas Co., 158 Mass. 135; Railroad v. Eubanks, 48 Ark. 466; Quinn v. Rail-

road, 175 Mass. 150; Peterson v. Traction Co., 23 Wash. 637; Railroad v. Voigt, 176 U. S. 498; State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 163; State v. Tie Co., 181 Mo. 536; State ex rel. v. Standard Oil Co., 218 Mo. 378; Matthews v. People, 202 Ill. 389; Lochner v. New York, 198 U. S. 45; Adair v. United States, 208 U. S. 161.

*E. M. Harber* and *A. G. Knight* for respondent.

(1) (a) Reversible error cannot be predicated on the court's action in overruling defendant's motion to strike out the paragraphs of plaintiff's replication, for the reason that defendant's answer had set out and pleaded *in haec verba* the alleged contract of plaintiff releasing defendant from liability. The replication thereto contained a general denial, and under this general denial the plaintiff was entitled to show the invalidity of the contract as fully and completely as he could have done with the added paragraphs. Hence, to have struck them out would in no way have changed the issue. The sustaining or overruling of said motion, therefore, was immaterial, because it did not affect defendant's defense in the least and they were mere surplusage. It cannot be therefore said to "materially," or even at all, affect the "merits of the action," and under the statutes and decisions was harmless. R. S. 1899, sec. 865; Crawford v. Spencer, 36 Mo. App. 78; Conrades v. Spink, 38 Mo. App. 309; Tyrrel v. Milliken, 135 Mo. App. 301; McDearmott v. Claas, 104 Mo. 14; Berkson v. Railroad, 144 Mo. 211; Heman v. Wade, 140 Mo. 340; Holenbeck v. Railroad, 141 Mo. 97; Lamar Light Co. v. Lamar, 140 Mo. 145; Mulherin v. Simpson, 124 Mo. 610; Gordon v. Eans, 97 Mo. 587; Griggs v. Edwards, 78 Mo. 473; Ozark Land Co. v. Hays, 105 Mo. 143; Ivy v. Yancey, 129 Mo. 501; Daggs v. Smith, 193 Mo. 494. We are aware of the rule that where there is nothing on the face of the contract or the petition (in

this case the answer) which indicates any other than a valid contract, then the rule is that if the contract is to be invalidated by some extrinsic matter, such matter must be pleaded in order that it may be made issuable at the trial, and that the same, so far as pleading is concerned, is not unlike that of champerty, gaming, usury and the like. Association v. Delano, 108 Mo. 220; McDearmott v. Sedgwick, 140 Mo. 172; Kelerher v. Henderson, 203 Mo. 498; Bell v. Warehouse Co., 205 Mo. 475. But it is equally true that a denial does put in issue the validity of the contract sued upon, and where the illegality of the contract appears from plaintiff's own showing, or upon the face of the contract itself, without the aid of extrinsic evidence, or is in violation of a positive law, that then a general denial is all that is necessary to dethrone such contract, refuse its admission in evidence, or defeat a recovery or defense founded thereon. McDearmott v. Sedgwick, 140 Mo. 172; Association v. Delano, 108 Mo. 220; Kelerher v. Henderson, 203 Mo. 498; Gibson v. Jenkins, 97 Mo. App. 27; McClure v. Ullman, 102 Mo. App. 697; Musser v. Adler, 86 Mo. 445. (b) Ordinarily motions to strike out parts of a pleading are no part of the record proper, are matters of exception, and can only be made a part of the record by a bill of exceptions. Tarkio v. Clark, 186 Mo. 293. (2) The act of 1897 is not in violation of any of the provisions of the Constitution of the United States. Powell v. Sherwood, 162 Mo. 620. Since the decision in the Powell case, supra, the constitutionality of the act of 1897 has twice come before the Supreme Court of this state, In Banc, and each time has been held constitutional. Cambron v. Railroad, 165 Mo. 555; Callahan v. Railroad, 170 Mo. 473; Tullis v. Railroad, 175 U. S. 351. The constitutionality of this statute has been so thoroughly established by the decisions of this court, that such question is no longer a "live one," but is expressly foreclosed by those prior decisions. State v. Campbell, 214 Mo.

362; Railroad v. Mackey, 127 U. S. 205; Railroad v. Pontius, 157 U. S. 209; Railroad v. Mathews, 165 U. S. 1; Frisbie v. United States, 157 U. S. 160; Tullis v. Railroad, 175 U. S. 353; Patterson v. The Eudora, 190 U. S. 169; Insurance Co. v. Needles, 113 U. S. 574; Sinking Fund Cases, 99 U. S. 700; Railroad v. Bristol, 151 U. S. 556; Railroad v. Paul, 173 U. S. 404; Railroad v. Mathews, 174 U. S. 96; Hooper v. California, 155 U. S. 648; Insurance Co. v. Daggs, 172 U. S. 557; Dayton v. Iron Co., 183 U. S. 23; Railroad v. Humes, 115 U. S. 512; Railroad v. Beckwith, 129 U. S. 26; Hissong v. Railroad, 91 Ala. 514; Railroad v. Paul, 64 Ark. 83; Railroad v. Lassiter, 50 So. (Fla.) 428; Coal Co. v. Polland, 158 Ind. 607; Himrod Coal Co. v. Clark, 197 Ill. 514; McGuire v. Railroad, 131 Ia. 340; Railroad v. Peavy, 29 Kan. 169; Newport News Co. v. Eifert, 15 Ky. L. Rep. 575; Willis v. Railroad, 62 Me. 488; Wagner v. Railroad, 188 Mass. 437; Doyle v. Railroad, 162 Mass. 66; Doyle v. Railroad, 166 Mass. 492; O'Niel v. Iron Co., 63 Mich. 690; Johnson v. Fargo, 184 N. Y. 379; Coley v. Railroad, 128 N. C. 534; Railroad v. Spangler, 44 Oh. St. 471; Johnson v. Railroad, 163 Pa. St. 127; Johnson v. Railroad, 55 S. C. 152; Railroad v. Jones, 2 Head (Tenn.) 517; Waters Pierce Oil Co. v. Texas, 19 Tex. Civ. App. 11; Johnson v. Railroad, 86 Va. 975.

LAMM, P. J.—Plaintiff lost his right foot and ankle while in the line of duty as a switchman in defendant's yards and employ in Milan in June, 1904. He sued, laying his damages at twenty thousand dollars, grounding his action on, first, negligence in furnishing defective machinery (couplers, drawheads and coupling apparatus); and, second, on the negligence of a fellow-servant, to-wit, the engineer of the switch engine, in that, without any proper order or direction so to do, he ran his engine against a car and plaintiff's leg, plaintiff being at the time engaged in manipulating and adjust-

ing the coupling apparatus of the car to the end of presently effecting a coupling with the engine for switching purposes.

Commenced in Sullivan, removed to the Federal court, there dismissed, brought anew in Grundy, appealed once before from a judgment for five thousand dollars, reversed and remanded (223 Mo. 649, *q. v.*). then taken on a change of venue to Linn, the case now comes here again on defendant's appeal, this time from a judgment of fifteen thousand dollars.

When the case went down, defendant moved to strike out all allegations pertaining to defective appliances. This motion was sustained and plaintiff went to trial upon a petition bottomed alone on the duty of defendant to handle its switch engine with care, having regard to the safety of employees required to work about the same, and a negligent violation of that duty. in that the engineer, as said, without order or direction, negligently ran his engine with force and violence against a car, while plaintiff was adjusting the coupling appliance, catching plaintiff's right foot between the drawheads, and so mashing it that amputation followed four inches above the ankle.

The amended answer, after a formal admission or two, and a denial, as a further defense, set up a written contract whereby plaintiff, in consideration of his employment and receipt of one dollar in hand paid, released defendant from liability for any and all injuries received while in its employ, by or through the negligence or want of care and caution on the part of any other employee or employees of defendant. and acknowledged full satisfaction and payment of all claims for damages against defendant which may accrue to him, or to any other person on account of such injury to him while in such employ.

By replication plaintiff denied all and singular the allegations of new matter, next alleging affirmatively that the contract pleaded as a defense in the answer

was against public policy, in violation of the policy and laws of the state, and, therefore, void. To further break and avoid its effect, the reply pleaded waiver and estoppel in that, with knowledge of the injury of plaintiff and the negligence and wrongful acts of its own causing the same, defendant had not only fully investigated the same but litigated with plaintiff for years in different courts of this state its liability, and now, for the first time, undertook to set up, plead and seek advantage of said instrument. (*Nota bene*: Defendant filed answer to plaintiff's petition as amended on the 23d day of February, 1910, for the first time pleading a release by virtue of the contract of employment, and on the same day plaintiff replied as above). On the same day defendant filed a motion to strike out those parts of the reply setting up waiver, estoppel, that the contract was void, against public policy and in violation of the statutes of the state. The grounds of this motion will appear presently in the opinion.

The court entries show that on the same day the motion to strike out was taken up and overruled, "defendant excepted." The court's order overruling the motion for a new trial also shows defendant excepted.

After filing an affidavit for appeal, depositing its docket fee, having its appeal allowed and taking record leave to file its bill of exceptions on or before July 1, 1910, defendant filed none—its statement of the case in its brief closing with the following: "Defendant appealed and has brought up the record proper for review by this court."

A summary of contentions made follows: For defendant it is argued that, first, the motion to strike out parts of the reply filled the office of a demurrer, therefore, a bill of exceptions was not necessary to preserve the motion or the court's action thereon, those things being part of the record proper; that, second, the effect of the court's ruling on that motion was to sustain those parts of the reply struck at, as pleas good at law,

therefore, whether such pleas were good at law is here to be determined; that, third, the contract of release was not opposed to public policy or prohibited by any valid statute—meaning thereby that the statute interdicting such a release was unconstitutional and void; fourth, defendant was not estopped to set up the release; and, fifth, the verdict was grossly excessive.

For plaintiff it is argued *contra*. Further, that if there was error *nisi* in ruling on the motion to strike out, it did not materially affect the merits; that the motion is not part of the record proper, therefore is not here, absent a bill of exceptions; that, at any rate, some of the grounds of the motion were not in the nature of a demurrer, and (if any ground be in the nature of a general demurrer, then) plaintiff, under his general denial in the reply, was entitled to show the contract was void; and that, at all events, the motion was well ruled for that the statute interdicting such contract in abrogation of liability under the fellow-servant law is a valid and constitutional exercise of legislative power.

Attending to the questions raised, we rule as follows:

I. At first glance (on the surface of things, as an abstract proposition) fifteen thousand dollars for the loss of one foot is a full, round sum and might well be held excessive (if we were at liberty to deal with it) absent elements of malice, as here, and where plaintiff is entitled to just compensation and no more. The conservatism of this court on damages in such cases is evidenced by a line of decisions, early and late, assembling a cloud of witnesses in that behalf. In dealing with *remittiturs* in personal injury cases we have eschewed sentimental conceits, elements of punishment, and mere views to catch the crowd (*ad captandum vulgus*)—for example, that the jury or court should place themselves in the position of plaintiff and, on that hypothesis, put a financial estimate on what one or the

other would take and swap places with him. We have sought to put such damages on the solid basis of a fair, reasonable estimate of a recompense, keeping in mind the injury, the detriment probably ensuing to plaintiff in the future therefrom, and have refused to allow an unhappy accident to be capitalized at such sum as would make a fair mind instinctively cry out against it as a mill-stone about the neck of business, or as filling plaintiff's pockets so full that he is left in a better fix than he would likely be in had the accident not happened. But in delivering pronouncements on *remittiturs* we have always kept the *facts* of the concrete case in eye as a guide-board; and our rulings in that behalf, from the very necessity of things, took color and direction from the facts established by the evidence, not otherwise. Here, absent a bill of exceptions, we have no facts and no evidence. Therefore, we are put to a leap in the dark. The time this plaintiff lost by his injuries and its value, the surgical, medical and nurse attention and resulting outlay, the details of his hurts from which would follow greater or less pain and anguish, whether the amputation was successful and the wound healed blandly by first impression, or he long languished sick in body and mind, are hid out in a sealed book.

Nor does the fact that a Grundy county jury put his damages at five thousand dollars, while a Linn county jury, years later, multiplying them by three, put them at fifteen thousand dollars, alter the case. One jury may have made a sounder estimate than the other —but *which one?* So, the last jury may have had the advantage of better evidence than the first. If (absent the evidence) we are put to an assumption or guess, we would be bound to assume it so, to support the verdict and maintain the wisdom of trial by jury. If the verdicts had been the same, that would be some evidence both were fair. But the contrary does not follow. Peradventure verdicts may be allowed to wax and

wane, like the moon, without provoking astonishment or incredulity from bench or fireside. We cannot well write the law to be that a mere difference in verdicts is evidence, *on the record proper,* that the last one is excessive. The only judicial use (if, indeed, it is put to us to assign it an office and use) to which the difference in the verdicts may be put is to take the case, earmarked with vicissitudes, as it is, as serving the possible future purpose of some moralizing law-writer in pointing some humble moral in some unwritten chapter on some new phase of the doctrine of *Assumed Risks;* for, verily, is not an increased verdict one of the ''usual risks'' a litigant assumes on a second trial?

Assuming the verdict is part of the record proper, yet, absent the evidence and a motion for a new trial raising the point of excessiveness, and present a verdict, regular on its face and within the lines of the petition, the point is without substance and must be disallowed to defendant.

**II.    Of the motion to strike out parts of the replication.**

All other assignments of error may be considered under the above head; for they cover a cluster of questions grouped about the motion. In leading up to some of them, the subject-matter may be profitably developed by some preliminary observations, for instance:

Courts take judicial notice of matters of public history; for such history is a lamp of judicial interpretation hung out by reason. Many statutes are but exponents of crystallized and dominant public sentiment, gathered from the history of the times and finally bodied forth in legislative enactments. Such is the Fellow-Servant Act.

At one time there was *judicially* grafted upon the main stock of our state jurisprudence the doctrine that a railroad corporation was liable to employees and personal representatives for damages from the negligence of a fellow-servant resulting in death or

injury. In 1865, in Schultz v. Railroad, 36 Mo. 13, the old Damage Act was construed that way. In Connor v. Railroad, 59 Mo. 285, the doctrine of the Schultz case was reaffirmed. But eleven years afterwards it was exploded in Proctor v. Railroad, 64 Mo. 112, and the common law rule, re-established, was thereafter continued in force for twenty-one years.

In 1897, the Fellow-Servant Act was passed (Laws 1897, p. 96). That act not only turned a new leaf in the Book of the Law of the Land, but, as with a consuming torch, burned to ashes a wealth of case-learning with its refinements in definitions of "fellow-servant," and in the philosophy and application of the old rule, whereby the courts were put to mighty labor and pother to administer old rules in the light of changed conditions and to put new wine of interpretation in the old bottles of the law—all with a semblance of preserving it from chaos or radical change.

After full consideration in Strottman v. Railroad, 211 Mo. 227, it was held by the majority of the judges that the original Fellow-Servant Act gave no right of action for the *death* of an employee by the negligence of his fellow, but only covered damages for injuries so received, to be recovered in an action by the party injured. Three of us were of opinion that the statute covered damages for death as well as injuries, that is, that damages for death, under then existing law, could be recovered by those persons named in the old damage act. While that case was pending, the General Assembly amended and perfected the Fellow-Servant Act in that particular so that it now brings within its purview damages for death (Laws 1907, p. 252), and its force is no longer spent in creating a new liability for injuries and none whatever for the capital event of resulting death itself.

Looking backward to the history of the times, we take judicial notice of the fact that the passage of the Fellow-Servant Act was preceded (and followed) by

the enactment of similar statutes in many states of the union—all of them striking down the doctrine of the common law in that behalf and establishing a new rule of liability. We know, too, that its passage in this state, as elsewhere, was preceded by much public agitation in lay and legal periodicals, on the rostrum by publicists, in labor, legal and business circles, maintaining the justice of the proposed change and calling out for it. *Per contra,* the old doctrine and the old rule was stoutly defended by its theoretical admirers and interested supporters. The matter being well hammered out on the anvil of public discussion, things happened in that behalf indicating a dominant public sentiment in favor of adopting the proposed new right and remedy, while, at the same stroke, clearing away common law obstacles in order that the new right and remedy might occupy the field. In obedience to that sentiment, the Fellow-Servant Act sprang into being. As part of it, recognizing that the old doctrine might be given up with a pang and not without a struggle to maintain it in some roundabout way, the Fellow-Servant Act made the new right and new remedy invulnerable to evasion or overthrow by section 4 (Laws 1897, p. 97; Sec. 5437, Revised Statutes 1909), reading: "Sec. 5437. No contract made between any railroad corporation and any of its agents or servants, based upon the contingency of the injury or death of any agent or servant, limiting the liability of such railroad corporation for any damages under the provisions of sections 5434 to 5437, inclusive, shall be valid or binding, but all such contracts or agreements shall be null and void."

Six years after the enactment of that law, Shohoney entered the employ of the defendant corporation, signed a contract releasing defendant from liability for any and all injuries received by him through the negligence or want of care or caution of any other employee of defendant, and acknowledged full satis-

faction and payment of all claims for damages accruing to him or any other person on account of such injury. Shohoney sued February, 1905. In February, 1910, the defendant by answer set up the contract as a defense to an amended petition. The reply to that answer, as said, was (1) a general denial, (2) waiver and estoppel, because of certain facts pleaded, and (3) that the contract was void because in contravention of express statute and as against public policy and the policy of our laws. Defendant attacked all the reply, except the general denial, by a motion to strike out. Its grounds (quoting) were:

"For the reason that said parts of the reply are not properly matters of reply, but are arguments and statements improper to be submitted to a jury and for the further reason that the statute of the State of Missouri, to-wit, section 2876 of the Revised Statutes of the State of Missouri, 1899, under which plaintiff claims the contract pleaded in defendant's amended answer is void, is itself unconstitutional and void for the reason that said section is in violation of section 15 of article 2 of the Constitution of the State of Missouri and of section 10 of article 1 of the Constitution of Missouri, and section 1 of article 14 of the amendments to the Constitution of the United States, and of other sections and articles, both of the Constitution of the State of Missouri and the United States, in that said section is special legislation, limits the rights of citizens to enter into contracts, impairs the obligation of contracts, grants special rights and immunities and denies to railroad companies and to the defendant in this case the equal protection of the laws."

On such record, we rule there is no reversible error in overruling the motion to strike out. This, because:

(a). The case went to trial on an unemasculated petition, answer and replication. The answer set up

Shohoney's contract by way of release. The reply pleaded matter avoiding the contract. The legal effect of the ruling on the motion to strike out was to leave those issues in the case to be threshed out at the trial. Thus defendant was left with the right to offer Shohoney's contract in evidence—plaintiff with the right to raise its illegality, either by way of objection to its introduction as evidence, or by a motion to exclude it afterwards, or by an instruction. So, defendant by instruction could have challenged the constitutionality of the law interdicting such contracts.

In aid of the judgment on appeal we must assume (in the absence of a motion for a new trial, preserved in a bill of exceptions, and of an exception saved in such bill to the overruling of the motion for a new trial) not only that defendant acted within its rights but that the ruling of the trial court, while defendant was so acting, was correct. In other words, counsel are presumed to have used diligence in going to the fair limit of their leave under the pleadings and to have tried their case for all that was left in it. So, the court is presumed to have proceeded without error, and that presumption abides until an appellant shows us to the contrary. It will not do to overturn a judgment merely because the court at one step, by some ruling on a motion, indicated a questioning or hostile attitude to defendant's position, so long as the ruling left to defendant an open road to maintain in an orderly way its position on the issues as framed. In this view of it, what injury could result to defendant from overruling the motion?

(b). Moreover, the motion was not aimed at the general denial in the replication, so that, if it had been sustained, the general denial stood. In such condition of things, the better rule is that where the matter showing the illegality of a contract appears on the very face of the pleading counting on it, its illegality is left a live question to be dealt with by the trial

court without a formal plea of facts showing its illegality. Courts take judicial notice of public statutes, hence, where a contract counted on is stained on its very face with the vice of being in contravention of such statute, the law does not require the adventitious aid of a plea of illegality in order to deal with it. The law forces no one to do vain and useless things (*Lex neminem cogit ad vana*, etc.). Not so where the alleged illegality arises from extrinsic or collateral matter not appearing on the face of the pleading. In such case a plea fills an office. [McDearmott v. Sedgwick, 140 Mo. l. c. 182, *et seq.* Cited and followed in Kelerher v. Henderson, 203 Mo. l. c. 512-3.] The rule is that where a party cannot open his case or sustain some particular defense without showing that he has broken the law the court will not assist him (Gibson v. Jenkins, 97 Mo. App. l. c. 42), and this without an affirmative defense pleaded to the contract. To the same effect is McClure v. Ullman, 102 Mo. App. l. c. 705-6. If a contract is illegal and the illegality appears from it or from the evidence necessary to make out a case on it, the illegality is effective to deny remedy, though not pleaded. [School District v. Sheidley, 138 Mo. l. c. 690.] It follows that had the court sustained the motion to strike out, still the question of the illegality of Shohoney's contract of employment was left in the case for determination. This is all defendant should ask. Therefore, such interlocutory ruling left defendant no better or worse off by it. Such ruling, then, did not materially affect the merits of the case and we are confronted by the statute forbidding us to reverse a judgment on error not fatal to the merits. In this view of it there is no substance in the assignment of error relating to the motion.

(c). Again, conceding *arguendo* that the motion to strike out is part of the record proper, yet if defendant raised its constitutional point only by such motion; if (when the road was left open to it) it neg-

lected to pursue its constitutional point, offer its contract in evidence, challenging the ruling of the court on it and saving an exception, if adverse; if it neglected to ask instructions on the constitutionality of the law or file any motion for a new trial challenging the ruling in disallowing such instructions or evidence; and, what is equally bad or worse, if it failed to file a bill of exceptions, as here, it waived its constitutional point by abandonment. It died below and remains dead above.

Courts may not shirk their duty to say a law is unconstitutional, if it be so, but they do not go out of their way to lug in a constitutional question or keep it alive when a litigant has allowed it to die. The comity that exists between the judicial and legislative branches of the government forbids us to approach the constitutionality of a statute lightly or to strain after grasping such point and holding it in judgment; for a strong presumption obtains in favor of the validity of a statute. In this view of it the constitutional point is out of the case.

(d). Not only so, but we do not think the motion to strike out could be preserved for appellate review except by saving an exception to overruling it and by calling the trial court's attention to its own error anew in a motion for a new trial and preserving the motion to strike out and the motion for a new trial in a bill of exceptions. The point is approached with diffidence because there is general language of some of our decisions seemingly leaving it debatable and in a twilight zone.

It was early held that matter in a pleading stating no cause of action or defense was open to a motion to strike out as well as to a demurrer. [Sapington v. Jeffries, 15 Mo. l. c. 631; Niedelet v. Wales, 16 Mo. l. c. 215; Barley v. Cannon, 17 Mo. l. c. 597; Robinson v. Lawson, 26 Mo. l. c. 71; Ming v. Suggett, 34 Mo. l. c. 365; Howell v. Stewart, 54 Mo. l. c. 407.] Now, the

rule is that a demurrer not waived by pleading over, when stood on, preserves itself without the aid of a bill of exceptions or motion for a new trial. [State ex rel. v. Jones, 155 Mo. 570; Hannah v. Hannah, 109 Mo. l. c. 240; Houtz v. Hellman, 228 Mo. 655, and cases therein cited.] From the proposition that a motion to strike out may in some instances fill the office of a demurrer, the doctrine has been deduced that a motion which fills such office should be judged of by the rules pertaining to demurrers, i. e., when a motion is to all intents and purposes a demurrer dispositive of the whole case on a matter of law, the rules relating to a demurrer may be applied to such motions. [Austin v. Loring, 63 Mo. l. c. 21; O'Connor v. Koch, 56 Mo. 258.]

But care must be taken to follow the reason of the rule. There is a great body of exposition on the question and the rules of practice must be guardedly deduced therefrom.

In Acock v. Acock, 57 Mo. l. c. 156, it was ruled that if the action of the court in striking out *part* of the petition was not embodied as one of the errors in the motion for a new trial it would be disregarded on appeal.

In Collins v. Saunders, 46 Mo. l. c. 390, *part* of the petition was struck out and plaintiff presented the point in his bill of exceptions. It was ruled that was the proper way to preserve it, but, as there was no motion for a new trial giving the trial court an opportunity to review its own decision, the point was not reviewable on appeal.

In Childs v. Railroad, 117 Mo. l. c. 426, it was ruled, "that the refusal of the court to strike out a pleading is a matter of exception and nothing more," and that exceptions to such ruling must be taken at the time and "again brought forward in the motion for a new trial as grounds therefor and they must be made a matter of record by a bill of exceptions."

In Williams v. Railroad, 112 Mo. l. c. 485, one of

the assignments of error was the action of the court in striking out *part* of the plaintiff's petition on the motion of defendant. The point was not brought forward in a motion for a new trial and this court disposed of it as follows: "We think the law is clearly against the contention of plaintiffs. It was their duty to give the trial court an opportunity to correct this error, if any, and, where this is not done, this court will not review the rulings of the lower court upon the point" (Citing cases). "And this ruling disposes of the other assignment that the court erred in refusing to strike out certain portions of the answer. This also was not made a ground of the motion for a new trial. We think there is a marked distinction between the cases of O'Connor v. Koch, 56 Mo. 253, and Butler v. Lawson, 72 Mo. 227, and similar cases, where the objection amounted to a demurrer to the whole case, and resulted in a dismissal of the cause, and cases like the one at bar, but it is unnecessary for us to discuss the rulings in those cases at this time."

In Asphalt v. Ullman, 137 Mo. 1. c. 564, the matter came up in this way: A *part* of the answer had been stricken out on motion of plaintiff at a term prior to the trial. But no term bill of exceptions was allowed and filed. On such record it was held that the ruling was not here for review. Observe, the effect of that ruling was that a proper bill of exceptions to preserve the point was necessary.

In Ewing v. Vernon County, 216 Mo. 1. c. 686, and Hubbard v. Slavens, 218 Mo. 1. c. 617, it was pointed out that the office of a motion to strike out was, as a general thing, not that filled by a demurrer; that the one calls for an "order" while the other raises an issue of law and invokes a judgment on that issue. What was there said may have been too general, for it took no notice of the exceptions to the general rule that the office of a motion to strike out might, where it disposed of the whole case on a question of law, fill the office of

a demurrer. In Sternberg v. Levy, 159 Mo. 1. c. 624, it was ruled broadly that a motion for a new trial was not necessary in order that we might review the ruling on a motion to strike out. This ruling was put on the authority of O'Connor v. Koch, 56 Mo. and Butler v. Lawson, 72 Mo. supra, but the case does not notice the contrary ruling in Williams v. Railroad, 112 Mo., supra. But in the Sternberg case it was further ruled that a motion for a judgment on the pleadings was not a demurrer, and hence, was no part of the record proper (p. 629). It should be noted that in the Sternberg case only a part of the interplea was struck at and that the motion itself was preserved in a bill of exceptions. The case merely holds that a motion for a new trial was not necessary to preserve the right to review.

In Boatmen's Saving Bank v. McMenamy, 35 Mo. App. 1. c. 202, et seq., part of the answer setting up an affirmative defense was stricken out. Defendant took the pains of saving his exception in a bill but omitted to call the attention of the court to the error complained of in his motion for a new trial. In that condition of things, ROMBAUER, P. J., with concurrence of his learned brethren, ruled that the point was matter of exception and the exception was lost because not preserved in the motion for a new trial.

Sitting in judgment on the case-learning on the point, SMITH, P. J., in Barber Asphalt Paving Co. v. Benz, 81 Mo. App. 1. c. 248, had before him a case where several of the defenses in the answer had been stricken out, leaving remaining others to which the motion did not extend. In that fix, it was pointed out that as the whole answer was not attacked no final judgment could go on the disposition of the motion. What that sound jurist had to say anent the record before him, is of value in the case at bar, viz: "The rule announced and applied in Jones v. Manly, 58 Mo. 563, and the other cases to the same effect cited by the defendant, is wholly without application to a case like

this, for in them it will be seen the motion and the order thereon extended to and covered the entire defense. Where the motion challenges the sufficiency of the entire legal or equitable defense pleaded, it is in legal effect a demurrer thereto and it need not be mentioned in the motion for a new trial. The correctness of the ruling on the former in such case is properly subject to a revision by the appellate tribunal without any reference thereto in the latter. But where, as here, the motion and order thereon only go to a part of the allegations of the answer and those remaining untouched tender one or more issues, then the ruling of the court is a matter of exception only and is not the subject of review unless the defendant's bill of exceptions shows that he not only duly excepted thereto but that he subsequently, in his motion for a new trial, assigned such ruling as one of the grounds therefor and duly excepted to the action of the court in overruling the same.''

All will agree that the general rule in Missouri, subject to exceptions, is that motions must be preserved in a bill of exceptions and called to the court's attention by a motion for a new trial, else an assignment of error, based on a ruling on the motion, is lost for appellate purposes; and that the trend of the judicial mind is to refuse to carve out new exceptions to the general rule. To that end it has been ruled that a motion for judgment on the pleadings is not preserved except by a ground lodged in the motion for a new trial and by a bill (Sternberg v. Levy, supra; Godfrey v. Godfrey, 228 Mo. 507; Bank v. Klein, 33 Mo. 559); that a motion to quash the proceedings is in the same category (Tarkio v. Clark, 186 Mo. 285); that a motion to strike out an amended petition because of a departure stands on the same foot (Bick v. Dry, 134 Mo. App. 589); that a motion to quash an indictment stands on the same foot (State v. Fraker, 137 Mo.

258); so to review a judgment (Daggs v. Smith, 193 Mo. 494) and motions to set aside a non-suit, to quash executions, to dismiss are treated similarly.

But we have pursued the matter far. It is obvious from the views promulgated in the cases reviewed that if a motion to strike out is not essentially a demurrer, if it could not be dispositive of the case, it, with the exception to the ruling thereon and with the motion for a new trial bringing forward the alleged error for the final consideration of the trial court, must be preserved in a bill of exceptions or it cannot be considered on appeal. The motion in hand does not measure up to the standard of a demurrer; it did not go to the whole plea, the case could not have been disposed of on a ruling on that motion, some of the matter in the motion was not matter of demurrer but purely and simply matter of motion. Our conclusion is that if we were to rule on the point as learned counsel for defendant wish, we would carve out a new exception.

By multiplying exceptions we would unsettle the practice and confuse it. We rule, then, that the motion to strike out part of the replication is not here, because not appearing in any bill of exceptions, and because the motion for a new trial is in like fix. Not to exist and not to appear are the same thing *(Idem est non esse et non apparere)*.

(e). But if we were to admit unsound or unsafe exposition in paragraphs (a), (b), (c), and (d), and were to hold that the motion to strike out part of the replication was part and parcel of the record proper and came here without any motion for a new trial or bill of exceptions, yet, we would still hold the motion soundly ruled below.

Counsel admit it settled and good doctrine that no person may contract against his own negligence; but, they argue, the Fellow-Servant Law makes the

master responsible to one servant for the negligence (not of the master, but) of his fellow. Therefore, they say, the doctrine does not apply to the case at bar. The gist of the contention is that the statute, heretofore quoted, interdicting contracts absolving the master from such liability, is unconstitutional, for that it impinges the general constitutional right of freedom of contract, *ergo,* is void.

Attending to that view of it, it may be said that liberty to contract, like any other form of liberty, may be abused. It is a legal precept that, "We are all slaves of the law, in order that we may be free." Liberty to contract is not without the pale of reasonable limitation by the exercise of the police power in legislation; for the welfare of the community, the well-being of the State, is at stake.

In a case involving the violation of the pension law by contracting for and receiving a fee greater than allowed thereby, the Supreme Court of the United States, speaking through Mr. Justice Brewer, in Frisbie v. United States, 157 U. S. l. c. 165, *et seq.*, held language pertinent here, viz.: "A second objection, insisted upon now as it was by demurrer to the indictment, is that the act under which the indictment was found is unconstitutional, because interfering with the price of labor and the freedom of contract. This objection also is untenable. While it may be conceded that, generally speaking, among the inalienable rights of the citizen is that of the liberty of contract, yet such liberty is not absolute and universal. It is within the undoubted power of government to restrain some individuals from all contracts, as well as all individuals from some contracts. It may deny to all the right to contract for the purchase or sale of lottery tickets; to the minor the right to assume any obligations, except for the necessaries of existence; to the common carrier the power to make any contract releasing himself from negligence, and, indeed, may restrain all engaged in any

employment from any contract in the course of that employment which is against public policy. The possession of this power by government in no manner conflicts with the proposition that, generally speaking, every citizen has a right freely to contract for the price of his labor, services, or property.''

On the postulate that a contract in violation of usury laws is void as against public policy (an accepted doctrine of the law), CULLEN, J., in Simpson v. N. Y. Rubber Co., 80 Hun 415, speaking to the point whether an employee could by contract waive the benefits of a statute requiring dangerous machinery to be fenced, said: ''But the state has great interest in the protection of its members, and this even of the most utilitarian character. In the case of a maimed employee, he and his family are likely to become a public charge; the same is true of the family of an employee killed. The community would seem to have as much interest in the protection of the life and limbs of a member of it as in the question whether he should pay eight per cent or six per cent interest. Yet by no means which human wit can devise can he make a valid contract to pay more than six per cent in this state.''

The case of Kansas Pac. Ry. Co. v. Peavey, 29 Kan. 169, is directly in point. It was there ruled that a railroad company cannot contract in advance with its employees for the waiver and release of the statutory liability imposed upon every railroad company organized or doing business in that state by chapter 93, laws 1874, and a contract in contravention of this statute is void, and is no defense to an action brought by an employee of a railroad company for damages done to him in consequence of the negligence or mismanagement of a co-employee.

To the same effect is Pittsburg, Cincinnati, Chicago and St. Louis Railroad v. Montgomery, 152 Ind. 1; Hissong v. Railroad, 91 Ala. 514; and Railroad v. Spangler, 44 Ohio St. 471. See, also, a very learned and

full note to Johnston v. Fargo, 6 Am. & Eng. Ann. Cas., from pages 3 to 7, inclusive, where many authorities are collated expounding the whole body of the law on the question.

The constitutionality of the Fellow-Servant Law has been sustained in its general provisions by this court and by the Supreme Court of the United States against assaults of the same character now under review. In this court its constitutionality was determined in Powell v. Sherwood, 162 Mo. 605. That case has been repeatedly followed. In writing the opinion therein our brother VALLIANT came up to the question of the constitutionality of the fourth section of the act of 1897, supra, and, though he did not discuss it for the reason it was not in his case, he does point out that the United States Supreme Court, in Minneapolis and St. Louis Ry. v. Herrick, 127 U. S. 210, held an Iowa statute with the same provision in it did not impinge on the Federal Constitution.

The Fellow-Servant Act being constitutional in its general provisions, it follows that the well-being of the state and public policy imperiously demand that its provisions be held immune from the right of private contract. What nobler public policy could obtain than that the laws of a self-governing people should be obeyed by all? If the benefits of the new law could be contracted away in a given instance by a stroke of the pen, it would presently not be worth the paper it is written on as a rule of civil action.

The words of the statute would be without life, mere sound and fury signifying nothing—the mischiefs would abide, the remedy be lost—if we should hold that railroad companies were at liberty to play upon the necessities or ignorance of their employees by exacting releases from liability as an incident to employment. The cry of the French woman when she faced a dreadful crisis in her life, "Oh, Liberty, Liberty, how many crimes are committed in thy name," would

likely serve a purpose in such event, as fairly descriptive of the result.

It is a golden rule of judicial exposition to discern what the common law was, what was the mischief and defect for which the common law did not provide, what remedy the statute appointed to cure the disease of the commonwealth and what was the reason of the remedy so provided. When these things are discerned by the judge, it is but trite and venerable doctrine that his office is to so construe the new statute as to suppress the mischief, advance the remedy and *"to suppress subtle inventions and evasions for continuance of the mischief, .. and to add force and life to the cure and remedy according to the true intent of the makers of the act, pro bono publico."* [Heydon's Case, 3 Coke, 7b.]

We hold section 4 of the Fellow-Servant Act (now section 5437, Revised Statutes 1909) is constitutional. Hence the contract set up in defendant's answer is void.

It follows that the judgment must be and is affirmed. All concur; *Graves, J.,* in result; *Valliant, J.,* not sitting.