A. M. RANDOLPH, Appellant, v. EDWARD FRICKE.—35 S. W. (2d) 912.

Court en Banc, February 2, 1931.*

* NOTE: Opinion filed December 31, 1930; motion for rehearing filed: motion overruled February 2, 1931.

*Roy B. McKittrick* and *Grover & Graves* for appellant.

*S. J.* and *G. C. Jones, Sasse & Merrell, John D. Taylor, M. J. Lilly* and *Gilbert Lamb* for respondent.

BLAIR, J.—Action instituted in the Circuit Court of Saline County in two counts, to-wit, in ejectment and to determine title to land said by plaintiff to be in Saline County. Defendant had judgment on the pleadings and plaintiff was granted an appeal to this court.

This is a companion case to Randolph v. Moberly Hunting & Fishing Club, 321 Mo. 995, 15 S. W. (2d) 834, herein referred to as the Moberly case, which was decided by this court February 11, 1929. The case at bar involves land described in the petition as the Northwest quarter of Section 25, Township 53, Range 20, and the Southwest quarter of Section 24, in the same township and range, alleged in the petition to be in Saline County.

The amended answer, filed after the Moberly case was decided, contained a plea to the jurisdiction of the Circuit Court of Saline County, and further alleged certain facts which are all practically admitted in plaintiff's reply to said amended answer. Thereafter defendant filed his motion for judgment on the pleadings and the same was sustained by the trial court. The facts, therefore, appear from the plaintiff's petition and reply.

Plaintiff contends that the motion for judgment on the pleadings admitted that the lands in controversy are in Saline County because the petition so alleged. Said allegation is a mere legal conclusion on the part of the pleader and the contention must be disallowed.

The real facts in the case, for the purposes of deciding this appeal, appear from plaintiff's reply to defendant's amended answer. Omitting customary quotation marks and the exhibits mentioned, we quote from said reply, as follows:

Further, and by way of reply, plaintiff admits that the land aforesaid was first surveyed by the United States Government in the year 1816, at the time of which survey the said Missouri River, at or near the location of the lands aforesaid, flowed in a curve around to the north in the shape of a horse shoe forming a peninsula extending from the County of Saline into the County of Chariton in the State of Missouri, which peninsula extended about four miles to the north into said Chariton County, which said survey is made a part hereof and marked plaintiff's Exhibit 1; that after the year 1816 aforesaid, and in the afflux of time, the force of the water of said river gradually wore away the neck of the peninsula aforesaid on either side thereof and thereby widened the expanse of land towards the northern part thereof; that land was taken into said river on the right and left of said peninsula and accretions were formed and accrued to the land within the peninsula and bend aforesaid; that the wearing away of the neck of the said peninsula and bend continued until the year 1879, when the said Missouri River suddenly abandoned its course around the bend and peninsula aforesaid and cut straight across the base of said peninsula, leaving all of the land within the peninsula and bend aforesaid, including the bed of said Missouri River around said bend and peninsula, on the north side of the main channel of said Missouri River; that the approximate point at which said river cut across the neck of said bend and peninsula being indicated by the short black lines at line "B" on

the photographic map of the peninsula aforesaid, as well as the topography and contour of the territory in and surrounding same at the date of the cutting through said peninsula in the year 1879 is shown by the map marked defendant's Exhibit "A," hereto attached, and made a part hereof.

Plaintiff further admits that in the year 1890, the United States Government caused the lands aforesaid to be surveyed from or on the north side of said Missouri River, which said survey is made a part hereof and marked plaintiff's Exhibit 2.

That in the year 1890 the duly elected, qualified and acting County Court of Chariton County caused a survey of the lands aforesaid embraced in said peninsula and the bed of said river to be surveyed by one Samuel J. Carter, the then duly elected and qualified surveyor within and for Chariton County, Missouri, which survey was based on United States Government field notes and shows the land described as in the deed from Saline County, Missouri, to the respondent, A. M. Randolph, which deed is hereinafter referred to.

That the survey so made by the said Samuel J. Carter in the year 1890 described the boundaries of the land in the deed aforesaid practically as the same were in the year 1898 at which time the same was officially surveyed by the surveyor of said Chariton County.

That in the year 1898, Chariton County, Missouri, through its duly elected, qualified and acting courts and officers of said county caused the lands aforesaid, including the bed of said river and the land formed within the peninsula aforesaid, to be surveyed, platted and described by the official Surveyor of said Chariton County and a certified copy of said survey and plat of the land aforesaid, including the lands particularly described in this petition, was by the County Court and Surveyor of said Chariton County caused to be recorded in the office of the Clerk of the County Court of Chariton County, Missouri, and in the office of the Recorder of Deeds for Chariton County, Missouri, a copy of which official survey and plat, made by the Surveyor of said Chariton County, Missouri, in the year 1898 as aforesaid, is hereto attached and marked defendant's Exhibit "B," and which survey of said Surveyor of Chariton County, Missouri, agreed in all particulars with the survey of said lands by the United States Government, made in the year 1890.

Plaintiff further admits that for a period of more than forty-seven consecutive years prior to the date of the commencement of the aforesaid action by plaintiff, A. M. Randolph, in the Circuit Court of Saline County, Missouri, against defendant, the lands referred to in the petition herein was a part of a contiguous body of land similarly situated, the whole of which containing approximately three thousand acres and embraced in the peninsula and bed of said river.

Plaintiff further admits that neither said Saline County, Missouri, nor its agents, officers or representatives aforesaid, have levied, assessed or collected any taxes against or on said land; that said land described in plaintiff's petition or the land in the vicinity thereof has not been incorporated in the municipal townships, school districts or road districts of respondent, Saline County, Missouri; that the courts of Saline County, Missouri, or the officers thereof, including the Circuit Court of said county, have not exercised nor assumed to exercise jurisdiction over said land or the lands in the vicinity thereof or over the owners or persons in possession of the same during the period since said cut off of said river in the year 1879; that the crimes committed on the lands particularly described aforesaid and the lands in the vicinity thereof have never been prosecuted in the courts of the said County of Saline; that neither the owners of said land nor those in possession thereof have ever exercised the rights of franchise in Saline County, Missouri, or in any municipal subdivision thereof.

Plaintiff further admits that for a period of more than forty-seven consecutive years prior to the 7th day of April, 1925, and since that date the lands described in plaintiff's petition and the lands in the vicinity thereof, as shown by said Exhibit "B," have been claimed by Chariton County as within the sovereignty of Chariton County.

Plaintiff further admits that the taxes have been regularly levied and assessed against the land aforesaid by said Chariton County and the municipal subdivisions thereof and the agents, officers and representatives of each of them for all taxes properly to be levied and assessed under the law and that said taxes have been paid by the claimants of said lands, other than plaintiff, including this defendant, to the officers, agents and representatives of said Chariton County, Missouri, and the municipal subdivisions thereof, and that said taxes so paid have been disbursed, used and expended by the officers, agents and representatives of said Chariton County, and the municipal subdivisions thereof, for the use and benefit of said county and the municipal subdivisions thereof and the State of Missouri; that the lands described in plaintiff's petition and the land in the vicinity thereof, have been surveyed and platted by order of said Chariton County, Missouri, its courts, agents, officers and representatives and deeds or patents to said lands, or a large portion thereof, have been executed by said Chariton County to defendant or his grantors for valuable considerations and to other claimants of said lands similarly located; that prior to the commencement of this action by plaintiff, and prior to any of the dates mentioned in said petition, the duly qualified voters of Chariton County, Missouri, at a public election held for that purpose, did organize said lands into municipal townships under the township organization law of the State of Missouri; that the owners of the land de-

scribed in said petition, as well as the owners of the lands in the vicinity thereof, as shown by said Exhibit "B," participated in said election and that the lands described in said petition, and the lands in the vicinity thereof, were organized as a part of Brunswick, Bowling Green and Missouri townships therein; that the lands described in plaintiff's petition, and the lands in the vicinity thereof, have been designated as a part of the school districts, within and for Chariton County, Missouri, and the municipal subdivisions thereof; that in pursuance thereof, school houses have been erected in said school district and taxes have been levied, assessed and collected against the lands of the defendant described in plaintiff's petition, as well as the lands in the vicinity thereof, for the purpose of paying for the erection of said school buildings and the maintenance of schools therein; that the lands described in plaintiff's petition, as well as the lands in the vicinity thereof, have been organized into road districts, all said acts having been done by said Chariton County, Missouri, the agents, officers and representatives thereof; that at all of the national elections, state elections, county elections, township elections and school district elections held within the County of Chariton and State of Missouri, within all the periods aforesaid, the defendant and his grantors and the claimants of land adjacent to the lands so claimed by the defendant and those in possession of said lands, have exercised the right of franchise and voted at elections held within the recognized boundaries of said Chariton County, and under the control and direction of the officers of Chariton County, Missouri; that the deeds and conveyances of the lands described in plaintiff's petition and deeds of trust now thereon, together with the lands in the vicinity of the same, have been, during the period aforesaid, regularly filed and recorded in the office of the Recorder of Deeds for Chariton County, Missouri; that the insurance policies on the buildings on the land described in plaintiff's petition, as well as the lands in the vicinity thereof, located said buildings as being in Chariton County, Missouri; that jurors for service in the courts of Chariton County have been drawn from those in possession of the lands aforesaid; that all crimes committed against the laws of the State of Missouri upon said lands and the land in the vicinity thereof, during the period aforesaid, have been prosecuted in the courts of the State of Missouri, within and for said Chariton County; that all suits of a civil nature arising on account of the lands described in said petition, and the lands in the vicinity thereof, have been filed and prosecuted in the courts of the State of Missouri, for and within said Chariton County.

Plaintiff further admits that the Supreme Court of Missouri has taken jurisdiction of and determined causes arising over lands located similarly with reference to said change in said river, to the land de-

scribed in plaintiff's petition on appeal from actions filed in the Circuit Court of Chariton County, Missouri.

Plaintiff further admits that the State of Missouri, its officers, agents and representatives, and said Chariton County and the municipal subdivisions thereof and their agents, officers and representatives, have, prior hereto, levied and assessed and will hereafter levy and assess taxes due the State of Missouri, the said County of Chariton, the municipal subdivisions thereof, the public school fund, the public road fund and all other taxes that may be properly assessed against lands in said county against the lands described in plaintiff's petition and the lands in the vicinity thereof; that the raising of public funds by taxation in the State of Missouri, the said County of Chariton and the municipal subdivisions of said County of Chariton, as well as the apportionment of public funds, have been and are now fixed upon the basis and recognition that the lands described in plaintiff's petition are within the boundaries of Chariton County, Missouri.

That during the late World's War soldiers for service in said war were selected and entrained by the Draft Board for Chariton County, Missouri, from the lands described aforesaid as citizens of Chariton County, Missouri.

Plaintiff further admits that during all of the period aforesaid the business of said Chariton County and Saline has been transacted with reference to the Missouri River, wherever situate, as the boundary line between said counties and that said Missouri River has been claimed and accepted during all of the period aforesaid by Chariton County, its agents, officers and representatives and the owners or claimants of said lands, including plaintiff and defendant, as the boundary line between said counties regardless of the location of said river or the nature or character of any change in the channel thereof.

Plaintiff admits that at or prior to the commencement of this action there was an action commenced against defendant in the Circuit Court of Chariton County, Missouri, in the name of Chariton County, involving the lands in plaintiff's petition, in which action the plaintiff agreed to pay the cost, and thereafter upon the application of this plaintiff he sought to be made a party to this proceeding by virtue of a claimed purchase of said lands by plaintiff from Chariton County.

Plaintiff further admits that during the month of June, in the year 1879, the Missouri River in the vicinity of the land described in plaintiff's petition had formed and presented a large bend extending north into the south side of Chariton County; that the north or left bank of said river at said time extended from a point a little east of the center of the south line of Section 32, Township 53, Range 19, north of the river survey; thence through the southeast quarter

of said Section 32, across the southeast corner of the northeast quarter of said Section 32, across the northwest corner of the northwest quarter of Section 33, north and south through the southwest quarter of Section 28; in a northeasterly direction from the center of the south line to the center of the east line of the northwest quarter of Section 28; thence easterly and north across the north half of the northeast quarter of Section 28; thence east on or near the north line of the northwest quarter of Section 27; thence southeasterly to a point, the southeast corner of the north half of the northeast quarter of Section 27; thence south and east through the south half of the northwest quarter of Section 26; thence south near the center of the southwest quarter of Section 26; thence south and west across the southeast corner of Section 24, to the range line. All of the above section in Township 53, Range 19. Thence south and west across the northeast quarter of Section 3 to about the center of the south line of said quarter section; thence south and east to a point near the southwest corner of the southwest quarter of Section 2, thence southeast across Section 11 to a point on the east line thereof near the southeast corner of the north half of the southeast quarter of said Section 11. Said Sections 2, 3 and 11 being in Township 52, Range 19, north of the Missouri River survey. That at or about the date aforesaid, the Missouri River cut through the peninsula theretofore formed and abandoned its former bed inside of the line above described and from a point about the center of the south line of Section 32, ran in a practically straight course south and east, north of the center of Section 4, across the southwest corner of the northwest quarter and the center of Section 3 and striking the original line above described and the original bank of the river above referred to, at a point in the southeast quarter of Section 3, Township 52, Range 19 aforesaid.

Plaintiff admits that following the avulsion above described in June of 1879, said Missouri River has gradually and imperceptibly moved southward until the north line of said river at the present time and at the time of the preparation of the plat and survey of said land hereinafter referred to, represented a substantially straight line extending southeast from a point about the southwest corner of the northwest quarter of Section 32 aforesaid to a point near the center of the south line of Section 4 aforesaid, to a point just north of the center of Section 10, Township 52, Range 19; thence to a point near the southeast corner of the northeast quarter of the southeast quarter of Section 11, Township 52, Range 19. That that part of said peninsula as it originally existed and lying south of the Missouri River, was a part of Saline County, Missouri, and as such prior to said avulsion was governed, controlled and under the jurisdiction of said Saline County, Missouri, its courts and local government. That within said territory and a part thereof are the lands described

in the deed from S. T. Gray, Commissioner of Saline County, Missouri, to this plaintiff, said deed and territory also embracing the lands described in plaintiff's petition, which deed is dated April 2, 1925, and recorded in Book 197, at page 315, of the deed records of Saline County, Missouri; that said deed from Saline County, Missouri, is the sole basis of plaintiff's claim to the lands described in plaintiff's petition. Said deed is marked plaintiff's Exhibit "5" and made a part hereof and comprises about 3,000 acres of land as shown by defendant's Exhibit "B."

Plaintiff further alleges that the condition of the river and the lands involved in this controversy in the year 1869, are shown by a copy of Government survey of 1869, hereto attached and made a part hereof by reference, and marked plaintiff's Exhibit "3." Said survey shows the main channel of the Missouri River as it existed in the year 1869 as marked by the line A. M. B. on said map and that the land in controversy in this suit at said time lay south of the middle of the main channel of the Missouri River then and was river bed land.

Plaintiff further states that said lands continued south of the middle of the main channel of the Missouri River all of the intervening years up to the year 1878, when the United States Government survey, herewith attached and made a part hereof by reference and marked plaintiff's Exhibit "4," was made. That in said map the line A. M. B. is the middle of the main channel of the Missouri River as it existed on that date. The middle of the main channel of the river as shown by the line A. M. B. is north of the land in this controversy, and that the lands involved in this controversy were south of said middle of the main channel and were at all times Missouri River bed land.

That thereafter about the month of June, 1879, the Missouri River cut through at the point "B" indicated in the Louis Beneke perpetuated testimony, which by reference is made a part hereof and which is plead in defendant's answer and admitted in this case as defendant's Exhibit "A;" that in said map the middle of the main channel of the Missouri River is indicated and is and was north of the land involved in this controversy, and the lands herein were, at all times, Missouri River bed land.

Plaintiff further alleges that the land involved in this controversy was at all times, from 1816 up to the time of the cut-off, in 1879, south of the middle of the main channel of the Missouri River and was at all times river bed land.

Plaintiff further alleges that Saline County is south of Chariton County and that the boundary line between Chariton and Saline Counties, as fixed by the statutes of the State of Missouri, and by the Constitution thereof, was the middle of the main channel of the Missouri River as it existed on the 30th day of November,

1875, as shown in Volume 1 of Wagner's Statutes of 1872, and Article 9, Sections 1, 3 and 4 of the Constitution of the State. Plaintiff further alleges that on 30th day of November, 1875, the lands involved in this controversy were south of the middle of the main channel of the Missouri River, and continued south until the time of the cutoff, in 1879, and were, at all times, river bed lands as described in Article 6 of the Revised Statutes, 1919, and the same article in prior statutes.

Plaintiff further alleges that the cutoff referred to herein and in defendant's answer was an avulsion caused by the sudden cutting through of the river at the point "B" at the neck of the peninsula and that the channel of the river changed from north of plaintiff's land to south of plaintiff's land a distance of three or four miles in a few hours.

This concludes our quotation from plaintiff's reply. An examination of the opinion written by WHITE, C. J., in the Moberly case discloses that the same facts were before this court in that case. We there held that Saline County was estopped to assert that the land there involved, which was in the same situation with respect to the change in the channel of the Missouri River as the land here involved, was in Saline County. In coming to that conclusion, Judge WHITE said:

"What are the facts which would work an estoppel in favor of jurisdictional control by Chariton County?

"The Act of 1895 provided that the land belonging to the State, not otherwise appropriated under the laws thereof, which have been formed by the recession and abandonment of 'old beds of lakes and rivers in this State, are hereby granted and transferred to the counties in which such lands are located to be held by such counties for school purposes.' [Laws 1895, p. 207, sec. 1.] The Act was passed sixteen years after the cut-off. The land in question and the territory called the bar land had been on the Chariton side of the river for that length of time, and Chariton County at that moment was exercising jurisdiction over that territory, and had caused a survey of it by Carter in 1890. Prima-facie it was in Chariton County, and therefore prima-facie it was granted to Chariton County. It was on that side of the river and under its control. In order to meet the situation Saline County must prove that the river, sixteen years before, had shifted, and must show how, whether gradually or by an avulsion, the middle of the main channel, the statutory county line, had shifted. Three years later Chariton County made official survey of those accreted lands and assumed general jurisdiction over them. For thirty years Saline County 'stood by' while Chariton County accomplished complete, continuous and notorious jurisdictional control, with all attendant burdens. Saline's action plainly said, as if in words: 'It is too troublesome and ex-

pensive, crossing the treacherous river, to arrest criminals, serve process and collect taxes over there. The land is worth little. Let Chariton do it.'

"Chariton did it. Chariton County proceeded to sell the land and used the funds for school purposes, as the Act provides; built a school house, formed school districts, built bridges, laid out roads. Persons might commit any kind of crimes in that territory; Saline County felt no duty to suppress or punish them, but allowed Chariton to incur the burden of protecting the lives and the property of the people of that territory. Public records of Chariton County showed all those proceedings, conveyances of land, collection of taxes, establishment of schools, arrest of criminals, administering of estates, and exercise over that territory of every function which a county can exercise. Saline County was charged with notice. For more than thirty years it made no objection. *It makes none now.*

"So, between the two counties, in the exercise of their governmental functions, under the authorities cited above, the Missouri River is the line which separates them. It is a matter of the exercise of governmental control and jurisdiction.

"The element of deception and acting upon it by the party alleging estoppel, some times said to be essential in cases between individuals, is implied or non-essential in a contest between jurisdictions. This appears from the authorities quoted above (43 C. J. 138, 139).

"It follows that Saline County is estopped to say that the land in dispute is in Saline County. The plaintiff claiming by quit-claim deed from Saline County, has no greater right than his grantor. The Circuit Court of Saline County had no jurisdiction of the case."

The Moberly case also held that Chariton County had acquired *de facto* county governmental jurisdiction over the lands in suit and the other lands formerly in Saline County, which were cut off by avulsion when the Missouri River suddenly changed its course in June, 1879. This was because the two counties thereafter treated the new channel as the boundary line and Chariton County had assumed governmental jurisdiction over the lands for a long period of years and Saline County, its officers and citizens, had tacitly acquiesced in the exercise of such assumed governmental jurisdiction by Chariton County. Therefore the right of Chariton County to exercise such *de facto* governmental jurisdiction could not be challenged by the plaintiff in a private suit at all and that "the Circuit Court of Saline County could not pass upon that question for want of jurisdiction of the case."

We deem it unnecessary again to review the decisions considered in the Moberly case. It suffices to say that we see no reason for departing from the conclusions therein reached that Saline County is now estopped to assert county governmental jurisdiction over the land here in controversy by reason of the facts and circumstances

set forth in plaintiff's reply, and that the circuit court of that county has no original jurisdiction to hear and determine the title to the land here involved or plaintiff's right to the possession thereof.

This court did not hold in the Moberly case, and we do not now hold, that the mere fact that the Missouri River suddenly left its former channel and changed its course, leaving on the north side of the middle of its new main channel lands which previously had been south of such channel, placed within the governmental jurisdiction of Chariton County the land in controversy, which before such avulsion had been within the governmental jurisdiction of Saline County. But we hold now, as we held in the Moberly case, that the assertion of such governmental jurisdiction by Chariton County over a long period of years with the full acquiescence and apparent consent of Saline County, to the extent and under the circumstances detailed in plaintiff's reply, estops Saline County and its officers from now asserting such governmental jurisdiction by undertaking to convey the lands and through its courts to determine title of the grantee and to put him in possession thereof; that Chariton County has acquired *de facto* governmental jurisdiction over the lands in controversy and such jurisdiction cannot be questioned by plaintiff in this suit.

In his motion for new trial for the first time, plaintiff complains that the judgment of the trial court denies him that equal protection of the law guaranteed by Article XIV, Section 1, of the United States Constitution. How plaintiff can be deprived of equal protection of the law by requiring him to assert his claim of title in the Circuit Court of Chariton County instead of Saline County does not appear. It stands admitted that a suit involving title to the land here involved was actually instituted in the Circuit Court of Chariton County against defendant here. The suit was originally in the name of Chariton County, but evidently was for plaintiff's benefit, because he took a deed from Chariton County and agreed to pay the costs of the suit and thereafter plaintiff sought to be made a party to the suit. It seems not to be admitted in the reply in this case that plaintiff was actually made a party to the suit instituted in Chariton County. If that case is one of the seven cases mentioned in the Moberly case, plaintiff was made a party and afterwards took a change of venue therein and the case was sent to the Circuit Court of Saline County.

We fail to find anything in Article III, Section 2, of the United States Constitution, which could possibly be violated by a denial to plaintiff of the opportunity to try his asserted title to the land in a suit originating in Saline County. That section defines the extent of the judicial power of the courts of the United States and does not purport to define or limit the powers of state courts.

Our conclusion is that the action of the trial court in rendering judgment for defendant upon the pleadings in this case was proper

144

and that the judgment so rendered should be affirmed. It is so ordered. All concur, except *Ragland, C. J.*, absent, and *Henwood, J.*, not sitting.