**BARNIDGE v. UNITED STATES.***

No. 11282.

Circuit Court of Appeals, Eighth Circuit.

Jan. 27, 1939.

*Rehearing denied March 4, 1939.

Norman Begeman, of St. Louis, Mo. (Julius T. Muench, of St. Louis, Mo., on the brief), for appellant.

Charles R. Denny, Jr., of Washington, D. C., Atty., Department of Justice, and Harry C. Blanton, U. S. Atty., of Sikeston, Mo. (Carl McFarland, Asst. Atty. Gen., A. T. Welborn, Asst. U. S. Atty., of St. Louis, Mo., and Oscar Provost, Atty., Department of Justice, and Philip Nichols, Jr., Atty., Department of Justice, both of Washington, D. C., on the brief), for the United States.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment in eminent domain proceedings, which were brought under the Act of Congress of August 21, 1935, 16 U.S.C.A. § 461 et seq., known as the Historic Sites Act. The Secretary of the Interior, acting under the Historic Sites Act, determined that certain lands in the City of St. Louis, Missouri, possessed exceptional value as commemorating or illustrating the history of the United States. Thereupon, the President, by Executive Order of December 21, 1935, No. 7253, after reciting that by this Act Congress had declared a national policy to preserve for public use historic sites, buildings and objects of national significance for the inspiration and benefit of the people of the United States, and that the Secretary of the Interior had determined that certain described lands situated on the banks of the Mississippi River at and near the site of Old St. Louis, Missouri, possessed exceptional value as commemorating or illustrating the history of the United States and were a historic site, and that the City of St. Louis had agreed to contribute for the project the sum of $2,250,000, allocated to the Secretary of the Interior from the funds made available by the Emergency Relief Appropriation Act 1935, 49 Stat. 115, the sum of $6,750,000, which, with the sum of $2,-250,000 to be contributed by the City of St. Louis, would make available for the said project a total sum of $9,000,000, and authorized and directed the Secretary to expend said sum in acquiring the said property and in developing and preserving it for the purposes of the Act. The City of St. Louis, pursuant to the provisions of the Act, deposited the sum of $2,250,-000 to the credit of the Treasury in the Federal Reserve Bank at St. Louis. On the request of the Secretary of the Interior, this condemnation proceeding was then instituted.

The appellant filed an answer to the petition in condemnation, in which he alleged, among other things, (1) that the Historic Sites Act did not authorize condemnation of land; (2) that the use for which the land was sought was not a public use; (3) that the Historic Sites Act was an unconstitutional delegation of legislative power; and (4) that no funds were available to pay any awards in the proceeding. The Government moved to strike parts of this answer as argumentative, and as stating only erroneous conclusions of law. The lower court granted the motion. The appellant then made an offer of proof, purporting to sustain the issues raised by his answer, and this offer was rejected.

The lower court then appointed commissioners to view the land for the pur-

pose of fixing the compensation to which the owners were entitled. Appellant excepted to the appointment of commissioners on substantially the same grounds which he had set out in his answer. The commissioners reported that damages and compensation for the taking of appellant's land were $13,200. Appellant filed exceptions to the commissioners' report, which were overruled. The Government also excepted to the commissioners' report on the sole ground that the award was excessive. The lower court heard the parties on the exceptions filed, and received testimony on the question of value. In the course of this hearing, appellant withdrew his exception as to the amount of the award, but proffered testimony in support of his contention that the site was not historic because the buildings on it were not historic. The lower court entered findings and judgment by which the commissioners' award was reduced to $11,000.

It has been stipulated that assignments of error based upon the action of the court in reducing the amount of the commissioners' award are withdrawn, but it is agreed that if we shall hold that the United States had the right to condemn the property, judgment should be ordered entered restoring the original commissioners' award of $13,200.

In seeking reversal, appellant in effect contends: (1) the court erred in sustaining the Government's motion to strike parts of appellant's answer; (2) there is no authority in the Historic Sites Act, or other Acts of Congress, to condemn the property of appellant for the purposes of the Historic Sites Act; (3) the use described in the Historic Sites Act is not a public one for which land may be taken by eminent domain; (4) the lands sought to be taken are not necessary for the effectuation of the purposes of the Historic Sites Act; (5) the Historic Sites Act unconstitutionally delegates legislative power.

■ In support of his contention that the court erred in striking parts of his answer, counsel seek to invoke the rule that all facts that were well pleaded in the answer must be accepted as true. Hence, it is urged that the allegations in the answer that there was no power in plaintiff to condemn, that no authority is vested in the Secretary of the Interior to commence proceedings, that the use is not a public one, that funds are not available, and that the Historic Sites Act is unconstitutional, must be accepted as true. But while, for the purpose of such motion, the well-pleaded facts must be accepted as true, it does not follow that conclusions of law are admitted. Equitable Life Assur. Soc. v. Brown, 213 U.S. 25, 29 S.Ct. 404, 53 L. Ed. 682; Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; Shohoney v. Quincy, O. & K. C. R. Co., 231 Mo. 131, 132 S.W. 1059, Ann.Cas.1912A, 1143; Randolph v. Fricke, 327 Mo. 130, 35 S.W. 2d 912. Admitting the facts pleaded, but not appellant's conclusions of law, the court held that the parts of the answer stricken did not constitute a defense to the proceeding.

It is true that the Historic Sites Act does not purport to authorize the condemnation of property for the consummation of its purposes. However, the Act of August 1, 1888, § 1, 40 U.S.C.A. § 257, contains a general grant of power or authority to prosecute condemnation proceedings where any officer of the Government is authorized to acquire real estate for public uses. Subsection (d) of Section 2 of the Historic Sites Act, 16 U.S.C.A. § 462(d), provides for authorizing the Secretary of the Interior to acquire property for the purposes of the Act "by gift, purchase, or otherwise." It has been held that the Government has the right of eminent domain as an attribute of sovereignty. Mississippi & R. River Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206; Kohl v. United States, 91 U.S. 367, 23 L. Ed. 449; Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170; United States v. Certain Lands in City of Louisville, 6 Cir., 78 F.2d 684. It is uniformly held that authority to acquire real estate conferred by the enactment of a statute after the Act of August 1, 1888, § 1, 40 U.S.C.A. § 257, carries with it power to condemn. Hanson Lumber Co. v. United States, 261 U.S. 581, 43 S.Ct. 442, 67 L.Ed. 809; United States v. Threlkeld, 10 Cir., 72 F.2d 464.

■ It is observed that the Historic Sites Act confers authority on the Secretary of the Interior to acquire, in the name of the United States, property for the purposes of the Act, by gift, purchase, "or otherwise." As authority had already been conferred to procure real estate for public uses by condemnation, it would seem to have been quite unnecessary to embody in

298

this Act specific authority to acquire real estate by condemnation proceedings. We must assume that Congress had full knowledge of the Act of August 1, 1888 and of the interpretation that had been placed upon it by the courts.

It is, however, urged that condemnation proceedings can not be maintained because no funds are available to pay the award, and counsel particularly refer to that part of the Act which provides "that no such property shall be acquired or contract or agreement for the acquisition thereof made which will obligate the general fund of the Treasury for the payment of such property, unless or until Congress has appropriated money which is available for that purpose." 16 U.S.C.A. § 462(d). But we think it is not a condition precedent to the right to maintain condemnation proceedings that funds for payment of award shall be available. In condemnation proceedings, title to the property does not ordinarily pass until full compensation has been paid, as well as ascertained. The purpose of the condemnation proceedings is to determine and fix the amount which must be paid for the property, if and when the Government decides to take title. In fact, it has been held quite generally that where, as here, possession of the property is not taken at or prior to the institution of condemnation proceedings, the proceedings may be abandoned at any time before the actual acceptance of the property and payment therefor. The Government is not bound to take the land or to pay the award. United States v. Gettysburg Electric R. Co., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576; United States v. Oregon Ry. & Nav. Co., C.C., 16 F. 524; Owen v. United States, 5 Cir., 8 F.2d 992; Kanakanui v. United States, 9 Cir., 244 F. 923; Macfarland v. Elverson, 32 App.D.C. 81. The property will not be acquired in this proceeding until the money is not only available, but has been paid into court.

It is further urged that the proceeding is violative of the provision that no contract or agreement for the acquisition of property shall be made "which will obligate the general fund of the Treasury for the payment of such property * *." 16 U.S.C.A. § 462(d). In the instant case, the method invoked for acquiring property is not by contract or agreement, but is by the exercise of the right of eminent domain. The judgment in such a proceeding, as we have already observed, fixes or determines the value of the property, or the damages which the property owner is entitled to receive in the event the Government shall take possession of the property. As said in Nichols, Eminent Domain (2d Ed.) Sec. 422, inter alia: "In proceedings of this character in no event does a personal judgment run against the condemning party. If it pays the judgment the land which is the subject of the proceedings passes into its ownership and possession; if it does not pay the judgment the owner retains his property. Payment is entirely voluntary but without payment the condemning party can not have the land."

Of course, where the Government has taken possession and appropriated the property prior to the entry of judgment in condemnation, then the judgment is an obligation of the general fund of the Treasury. Commercial Station Post Office v. United States, 8 Cir., 48 F.2d 183; Lee v. United States, 61 App.D.C. 153, 58 F.2d 879.

As it was not necessary that the funds be available as a condition precedent to the right to maintain this proceeding, it is not necessary to consider appellant's contention that the Executive Order by which the President allocated funds to this project was invalid, and that the Emergency Relief Appropriation Act of 1935, 49 Stat. 115, by which Congress appropriated the funds so allocated, was unconstitutional. As a matter of practical fact, so far as this appellant is concerned, the funds are available, and it would not seem to be in his power to challenge the validity of the executive or legislative act by which he can not possibly be injured. Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374; Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078.

It is urged that the purpose for which appellant's property is being taken is not a public purpose, for which land may be taken by eminent domain. If the Federal Government, under the Constitution, has power to embark upon the project for which the land is sought, then the use is a public one. Confessedly, the purpose can not be a private one. Primarily, the right to determine the purpose to be a public one is in Congress. It has been held that the taking of land for commemorative purposes is for a public use. United States v. Gettysburg Electric R. Co.,

supra; Roe v. Kansas, 278 U.S. 191, 49 S.Ct. 160, 73 L.Ed. 259; Old Dominion Land Co. v. United States, 269 U.S. 55, 46 S.Ct. 39, 70 L.Ed. 162. In the last cited case, it is said [page 40]: "Congress has declared the purpose to be a public use, by implication if not by express words. * * * Its decision is entitled to deference until it is shown to involve an impossibility."

It appears that on the property included in this project were situated the Spanish Colonial office, where, during the administration of Thomas Jefferson, third President of the United States, all of the first territory comprised in the Upper Louisiana Purchase was transferred to the United States; the Government House at which, on March 9, 1804, Charles Dehault Delassus, the Spanish Commandant in St. Louis, transferred possession of upper Louisiana to Captain Amos Stoddard, of the United States Army, who had been delegated by France as its representative, and at which, on the morning of March 10, 1804, Captain Stoddard, as the agent of the United States, took formal possession of the Louisiana Purchase and raised the American flag, by reason of which transactions the Spanish, French, and American flags waved successively over the site within a period of twenty-four hours; the place where Laclede and Chouteau established the first civil government west of the Mississippi; the place where Lafayette was received by a grateful people; the place where the Sante Fé, the Oregon, and other trails originated; the place where Lewis and Clark prepared for their trip of discovery and exploration, and the Court House in which the Dred Scott Case was tried. We think there can be no reasonable doubt that the proposed use of this land is a public one.

It is contended by appellant that the lands sought to be taken are not necessary for the effectuation of the purposes of the Historic Sites Act. But the Secretary has determined that it is necessary and expedient to acquire these lands, and the duty of determining that fact was vested in him and not in the courts. When Congress delegates to an administrative officer the power to determine necessity, his determination, with exceptions not here important, is not subject to judicial review. Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170;

Sears v. Akron, 246 U.S. 242, 38 S.Ct. 245, 62 L.Ed. 688; Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135; Joslin Mfg. Co. v. Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167; Rindge Co. v. Los Angeles County, 262 U.S. 700, 43 S. Ct. 689, 67 L.Ed. 1186; United States v. Threlkeld, 10 Cir., 72 F.2d 464; Coggeshall v. United States, 4 Cir., 95 F.2d 986. It is argued that the act of the Secretary of the Interior in attempting to condemn the land here sought to be taken is in any event an abuse of the power granted him by the Historic Sites Act. In this connection it is urged that the sole purpose of this Act is the preservation and restoration of historic buildings, and that the condemnation of land is authorized only for that purpose. We think no such limitations can be placed upon this Act. The declared purpose of the Act is to preserve for public use historic sites, buildings, and objects of national significance.

It is finally urged that this act is violative of the Constitution because it delegates legislative power to the Secretary of the Interior. The right to delegate such power as that described in the Historic Sites Act has been quite generally upheld by the courts. Union Bridge Co. v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523; Monongahela Bridge Co. v. United States, 216 U.S. 177, 30 S. Ct. 356, 54 L.Ed. 435; Greenwood County v. Duke Power Co., 4 Cir., 81 F.2d 986, reversed on other grounds 299 U.S. 259, 57 S.Ct. 202, 81 L.Ed. 178; Duke Power Co. v. Greenwood County, 4 Cir., 91 F. 2d 665; Kansas Gas & Electric Co. v. City of Independence, 10 Cir., 79 F.2d 32, 100 A.L.R. 1479.

We have no doubt of the power of the United States, under the Constitution, to acquire by eminent domain, or otherwise, sites of national historic significance for the purpose as declared in the Historic Sites Act and preserving them to commemorate and illustrate the nation's history.

Under the stipulation of the parties, the judgment, in the event we should hold that the United States had the right to condemn, was to be modified by restoring the original commissioners' award of $13,200. As so modified, the judgment is therefore affirmed and the cause remanded for further proceedings consistent herewith.