**MATTHEWS v. UNITED STATES.**
Nos. 11694, 11695.

Circuit Court of Appeals, Eighth Circuit.

July 16, 1940

Sam Costen, of Memphis, Tenn., for appellant.

John F. Cotter, Atty., Department of Justice of Washington, D. C., (Norman M. Littell, Asst. Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Charles R. Denny and Robert H. Fabian, Attys., Department of Justice, both of Washington, D. C., on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and BELL, District Judge.

WOODROUGH, Circuit Judge.

These appeals are taken to reverse judgments of voluntary non-suit entered on applications of the United States to condemn lands for flowage easement under the Mississippi Flood Control Act, 33 U.S.C.A. §§ 702a–702m. The lands comprise a tract of 20,000 acres in the Birds Point-New Madrid Floodway in New Madrid and Mississippi Counties, Missouri, the title to which is held by the appellant, A. J. Matthews, as trustee. Although the tract is well known as a unitary timber tract, it extends into two counties and a separate condemnation proceeding was instituted in each county. Separate judgments of voluntary non-suit were entered and separate appeals have been taken, but in the court below and again on this appeal, the two cases have been argued together and are determined in one opinion.

The appellant's lands are located in the Birds Point-New Madrid Floodway in a region which has always been subject to overflow during times of high water in the Mississippi River. In fact the lands are low in elevation and contain at all times lakes, swamps and ponds; the contour of the land in certain places reveals that river once coursed therethrough. The tract is almost entirely covered with virgin timber which replaces itself and flourishes in the conditions of flooding to which it is subjected. Flood waters do not sweep the land with current caused by overflow or diversion from the river, but rise to the substantial extent of their flood height by means of backwater from nearby St. John's Bayou. Complete details and history of the floods, as well as description of the lands, their timber, lumbering operations thereon and the relevant details of the government's flood control program, are set out in Matthews v. United States, 87 Ct. Cl. 662, where the Court of Claims made complete findings of fact relevant to the claim this appellant asserted in that case, that acts of the government had deprived

him of property without due process of law. He claimed in that action that the passing of the Mississippi Flood Control Act and acts done by the United States pursuant thereto constituted a taking of his property or rights therein and that the United States in consequence was bound to compensate him as upon an implied contract. The United States denied that there had been a taking in law or in fact and asserted that there had been no past and consummated physical invasion or destruction of use by the government or an ouster of the owner of possession or beneficial use of the property. The Court of Claims decided there had been no taking at the time there involved, April 10, 1933. The Court made the following finding of fact (87 Ct.Cl. 708): "Neither the United States nor any of its agents prior to institution of this suit caused any headwaters to flow over or stand upon plaintiff's land. The Government has not caused any additional backwaters to flow over or be impounded upon plaintiff's land, nor has it caused any physical damage or injury to the land, the drainage ditches therein, or to the timber growing thereon." In the course of its opinion, the Court stated (87 Ct.Cl. 719), "The United States did not take or intend to take plaintiff's timber or business, or any property right therein, and the facts do not show that the timber or any property right therein will be damaged or destroyed by any act of the Government." In the present action there is no claim or evidence in the record that the government has, since the time referred to, physically appropriated the land or altered the conditions described in the opinion of the Court of Claims.

Subsequent to the enactment of the Flood Control Act establishing the Birds Point-New Madrid Floodway, Major Somervell of the U. S. Army Engineers wrote letters to appellant offering to agree to a valuation of the maximum amount authorized for purchase of a flowage easement over the various tracts which comprised Matthews' holding. The letters, which each referred to a definite constituent tract, were in standard form and stated if the offer to agree on a valuation was accepted, friendly condemnation proceedings would be entered in court with a request that an agreed verdict be awarded in the amount of the offer. Appellant accepted the several offers, which totaled some $394,859.51, in due time, but when flood control officials conferred with officials in the Department of Justice, the latter found the valuations offered were too high to be conscientiously recommended to a court, and the flood control officials then wrote appellant that the offers were withdrawn. New offers from the flood control officials were tendered at substantially lower valuations, but appellant did not accept them. In June of 1932 he brought suit in the Court of Claims to enforce payment for the flowage easement at the prices offered in the first letters. The government demurred to his petition, and on April 10, 1933, he sought and was granted a voluntary non-suit. On the same day he filed another action in the Court of Claims in which he abandoned the position that he had a contract enforceable against the government and pleaded that the United States, by virtue of the passing of the Birds Point-New Madrid Floodway provisions of the Flood Control Act and action undertaken pursuant thereto, had taken his land and was liable upon an implied contract to pay him the value of his damages in the amount of $1,387,500. While this action was pending in the Court of Claims, the United States on August 17, 1933, instituted the present condemnation proceedings in the Federal District Court for the Eastern District of Missouri, naming appellant and others as parties defendant.

Appellant appeared in the condemnation proceedings in the District Court and denied that anyone other than himself had an interest in the land or was properly joined as co-defendant in the action. He moved that the proceedings be dismissed, and in the course of his pleading set out the position taken by him in his action in the Court of Claims and asserted: "That by reason of the aforesaid matters and things and by reason of the institution of his said suit in said Court of Claims, this defendant, as such trustee, has elected to regard the acts of the officers and agents of the said United States of America as a taking and expropriation of a perpetual flowage right upon and over said lands for a public purpose, and has effectively waived his right to insist on condemnation proceedings, and had on April 10, 1933, and prior thereto become and since then has been limited entirely to a recovery of just compensation therefor."

He also pleaded: "That by reason of all the foregoing, at least so far as concerns this defendant, the parties, the causes of action, scope of injury, issues and relief sought or to be had or administered in this proceeding in this court, and in the said suit, so previously instituted by this defendant in said Court of Claims, are in all respects substantially identical; that there existed and exists no necessity or occasion nor in fact any right on the part of said United States of America to condemn said land or the said easement therein, and that the above entitled action and proceeding in this court is vexatious and oppressive and should abate.".

The District Court held that the proceedings should be stayed, "pending a decision of this identical matter in the Court of Claims", but retained jurisdiction in case "there remain other points in it not decided by that court". The District Court appointed viewers, who were continued in their appointment from term to term.

Appellant's action in the Court of Claims proceeded to trial and was decided on May 31, 1938, when that court determined that his lands had not been taken. Matthews v. United States, 87 Ct. Cl. 662, supra. On April 6, 1939, the Secretary of War wrote to the Attorney General that further prosecution of the condemnation proceedings was unnecessary and requested dismissal. On April 11, 1939, attorneys for the United States made application to the District Court for an order dismissing the condemnation actions without prejudice; Matthews opposed the dismissal and within two days filed a motion requesting that Commissioners for the term be appointed and that they proceed to value the land for condemnation. The trial court heard argument on the motion, requested submission of briefs by the parties, and subsequently, in an order entered without opinion, dismissed the actions without prejudice. Matthews prepared a motion for a new trial and submitted a motion requesting permission to file it. The Court denied the motion, and Matthews appeals. In motions directed to this Court he has prayed leave to amend his answers in the condemnation suits so that he may defend those actions and counterclaim by asserting his acceptance of the original offers made to agree to valuation of flowage easements over his several tracts of land at the total value of $394,859.51.

Appellant contends on this appeal that the trial court erred in granting the dismissal without prejudice. He concedes that the "Question of dismissal or refusal to dismiss rests within the sound discretion of the court", but contends that the Flood Control Act shows a legislative intention that easements over all the lands in the backwater are to be condemned and that easements over other lands there have been condemned or purchased; he contends that he is not barred in any material particular by the judgment of the Court of Claims; and he asserts that before the motion to dismiss was granted his right to compensation had become absolute by virtue of his acceptance of the government's offers for condemnation at the agreed total valuation of $394,859.51. He has also filed, together with his motion to amend his answer, a memorandum of the reasons why the motion should be granted.

In Danforth v. United States, 308 U. S. 271, 60 S.Ct. 231, 236, 84 L.Ed. 240, the Supreme Court of the United States construed the condemnation provisions of the Flood Control Act as they applied to a contract for condemnation at an agreed valuation. In that case the landowner, who had accepted an offer made in the standard form first tendered to and accepted by Matthews, did not acquiesce in the government's attempt to repudiate the agreement, and was held entitled to enforce the contract in the government's action for condemnation. The Supreme Court passed upon the question of when a taking under the Act occurred, since a determination of that fact controlled the disputed issue of when interest began to run upon the award of damages. The Supreme Court held that due procedure under the Act contemplated a taking at the time when the government paid the award. The court said: "Until taking, the condemnor may discontinue or abandon his effort." It held that enactment of the legislation which authorized condemnation of property cannot be a taking, but that an actual appropriation of the owner's property could constitute a taking if it placed upon the property a burden, actually experienced, of caring for floods greater than it bore prior to the construction. The court further held that Danforth's lands in the Birds Point-

456

New Madrid Floodway had not been taken by the flood control construction work there proved. The Supreme Court also construed the Flood Control Act in United States v. Sponenbarger, 308 U.S. 256, 60 S.Ct. 225, 84 L.Ed. 230, and there held that a landowner whose realty in a floodway was not damaged by the work undertaken by the government under the Act could not recover for a taking of his property. The court held that enactment of the legislation did not confer upon a landowner a right to protection of property which was left subject to the same dangers of flood that existed before institution of government control, and that the Act and work done thereunder did not impose upon the property a servitude for future flooding. Both United States v. Sponenbarger and Danforth v. United States declare principles of law which support the decision of the Court of Claims in Matthews v. United States, 87 Ct.Cl. 662, supra, from which Matthews took no appeal.

 Appellant contends that the provisions of 33 U.S.C.A. § 702c demonstrate that Congress intended that a flowage easement over his lands should be condemned. He relies upon the proviso of that section: "Provided, however,. That if in carrying out the purposes of sections 702a to 702m of this title it shall be found that upon any stretch of the banks of the Mississippi River it is impracticable to construct levees, either because such construction is not economically justified or because such construction would unreasonably restrict the flood channel, and lands in such stretch of the river are subjected to overflow and damage which are not now overflowed or damaged by reason of the construction of levees on the opposite banks of the river it shall be the duty of the Secretary of War and the Chief of Engineers to institute proceedings on behalf of the United States Government to acquire either the

absolute ownership of the lands so subjected to overflow and damage or floodage rights over such lands."

But in Matthews' action in the Court of Claims the United States denied that there had been in fact any invasion of Matthews' property rights in the land or any ouster of his beneficial use. The cause of action in that case may be technically distinguished from the cause of action in the present proceedings[1] but the issue of fact arose upon the pleadings, was within the jurisdiction of the court and was proper to disposition of the controversy. The judgment of the Court of Claims estops Matthews from relitigating the fact found against him.[2] Matthews has not claimed or offered evidence to prove that the government has physically appropriated his property by acts done subsequent to the time to which the Courts of Claims' judgment relates, and he is hence not within the terms of the Act, which requires that the lands to be condemned are those free from overflow and damage at the time of the enactment of the provision or before the construction the Act contemplates. The findings of fact made by the Court of Claims also preclude any contention that the United States should condemn Matthews' property under the provision of the Act that "The United States shall provide flowage rights for additional destructive flood waters that will pass by reason of diversions from the main channel of the Mississippi River". Determination of the lands to be condemned under this section is left to the discretion of the Secretary of War. "The Secretary of War may cause proceedings to be instituted for the acquirement by condemnation of any lands, easements, or rights of way which, in the opinion of the Secretary of War and the Chief of Engineers, are needed in carrying out this project, the said proceedings to be instituted in the United States district court" etc. The Secretary

[1] See, f.i., United States v. Sponenbarger, 308 U.S. 256, 60 S.Ct. loc. cit. 230, 231, 84 L.Ed. 230. In general the issues of an action brought by a landowner on an implied contract raised by the Fifth Amendment, are similar to those which may arise in an action of condemnation. See, United States v. Lynah, 188 U.S. 445, 462 et seq., 23 S.Ct. 349, 47 L.Ed. 539. To the extent of the identity of issues Matthews litigated in the Court of Claims he is of course bound by the judgment of the Court of Claims,—res judicata.

[2] Maryland Casualty Co. v. Cox, 6 Cir., 104 F.2d 354, 357; Brooks v. Arkansas-Louisiana Pipe Line Co., 8 Cir., 77 F.2d 965, 968; Irving National Bank v. Law, 2 Cir., 10 F.2d 721, 724; Thierry v. Scherrer, 319 Mo. 241, 3 S.W.2d 722; see, Larsen v. Northland Transportation Co., 292 U.S. 20, 25, 54 S.Ct. 584, 78 L.Ed. 1096.

of War has determined that no easement over Matthews' lands is necessary, and even if the proper construction of the section should not permit his discretion to control, the findings of fact of the Court of Claims establish that no "additional destructive flood waters" pass over Matthews' land by diversion. There has been no physical appropriation of Matthews' property, and on the facts shown in the record he has no rights or interests which could properly be condemned under the terms of the Act.

■ There is no merit in Matthews' contention that the condemnation proceedings were dismissed in bad faith. The passing of the Flood Control Act and institution of work under its authority did not impose a servitude upon Matthews' property, United States v. Sponenbarger, 308 U.S. 256, 60 S.Ct.loc.cit. 229, 84 L. Ed. 173, and the fact that other property in the floodway has been condemned is entirely immaterial, since it is presumed that the officers have proceeded with due regularity in the discharge of their authority. United States v. Chemical Foundation Co., 272 U.S. 1, 14, 47 S.Ct. 1, 71 L.Ed. 131. Since we have decided that the established facts preclude condemnation under the Act, it becomes unnecessary to define the circumstances under which the law permits or forbids a condemnor to abandon condemnation while continuing with its project.

■ Matthews relies upon Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 209, to support his contention that his right to compensation had become complete before the United States undertook to dismiss its condemnation proceedings. But in that case the landowner adhered to his contract rights, while in the present case Matthews not only elected the inconsistent remedy of suit on an implied contract for $1,387,500 rather than suing on the agreement contracts for $394,859.51, but he further specifically pleaded that he waived his right to insist upon condemnation. Matthews' agreement to set a price on his flowage easement was by the terms of the agreement valueless if he waived any right to insist upon condemnation, since the obligation of the government under the agreement was to institute condemnation proceedings and in such proceedings recommend the agreed value stated as the fair value to be rendered in judgment. The agreement was repudiated by the government, and the subsequent conduct and pleading of Matthews constituted acquiescence in the repudiation. He has in the clearest manner elected to consider the contract abrogated and estopped himself from denying that his waiver of remedy by enforcement of the contract was final and binding.

■ Matthews has not established that his property has been taken by the government, and we find no valid reason for departing from the general rule declared by the Supreme Court that "Until taking, the condemnor may discontinue or abandon his effort." Danforth v. United States, 308 U.S. 271, 60 S.Ct.loc.cit. 236, 84 L.Ed. 240; Barnidge v. United States, 8 Cir., 101 F.2d 295, 298; Johnson & Wimsatt v. Reichelderfer, 62 App.D.C. 237, 66 F.2d 217; Owen v. United States, 5 Cir., 8 F.2d 992; Kanakanui v. United States, 9 Cir., 244 F. 923. The trial court did not err in granting the government's motion to dismiss.

Matthews' motion to amend his answer presents interesting questions of procedure, but since we have held that he is without right to rely upon the original valuation contract which he entered into with the government, and since the condemnation action was properly dismissed, any discussion of the motion would be merely academic. It is denied.

The judgment is affirmed in both cases.