## UNITED STATES v. 40.75 ACRES OF LAND, MORE OR LESS, SITUATE IN DU PAGE COUNTY, ILL, et al.

### Civ. A. No. 47 C 1077.

District Court, N. D. Illinois, E. D.

Feb. 24, 1948.

Beatty, Jr., Sp. Asst. to U. S. Atty., both of Chicago, Ill., for petitioner.

Edward B. Hayes and Stephen A. Milwid, both of Chicago, Ill., for defendants.

CAMPBELL, District Judge.

The primary concern of the court in setting all pending motions herein for oral argument was jurisdictional. Certain defendants had attacked the validity of the service of process upon them. As indicated in the court's memorandum of October 29, 1947, it was the invalidity of the first process served on the defendants that required the vacating of the original judgment on the declarations of taking. This jurisdictional question was removed in this instance when the motions were called for argument on February 4, 1948 by the Government's dismissal as to the Township Supervisors of Downers Grove and by the other defendants' admission that subsequent valid summons had been served upon them.

The remaining motions pending for disposition are (1) the defendants' motion and traverse to the petition for condemnation, (2) the Government's motion to strike certain sections of the motion and traverse, and (3) the defendants' motion to resume the taking of depositions which have been interrupted pending the disposition of the other motions.

I shall now take all the objections raised in the motion and traverse on the basis of the argument heard on February 4, 1948, and the briefs, pleadings and other papers heretofore filed from the inception of this cause.

As indicated in the second part of the memorandum of October 29, 1947, consideration of the question of the validity of the taking is required by Catlin v. United States, 1945, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911, if the property owners challenge it. The legal question now presented by the pending motions is the extent to which protesting property owners can attack the validity of the taking.

As above indicated, I have heard sufficient argument to pass at this time upon the legal issues presented in the motion and traverse and the motion to strike. These issues all relate to the central question presented by the Catlin case, viz., the ex-

Otto Kerner, Jr., U. S. Atty., for Northern District of Illinois, and Clarence W.

242

tent to which and the grounds upon which the Government's exercise of the eminent domain power can be attacked.

Taking in order the objections raised in the defendants' motion and traverse, I shall rule upon each; and wherever the Government has moved to strike a particular objection I shall rule upon the motion in connection with the portion of the traverse to which it is directed.

### Objection No. 1
#### Defendants' Motion & Traverse

■ The first objection is that the petition for condemnation is insufficient in law and fails to allege facts showing a cause of action. This objection is overruled.

### Objection No. 2

The second objection is that the basis for the condemnation set forth in the petition is not in fact true. This objection is an aspect of the attack on the good faith of the Atomic Energy Commission in undertaking this condemnation, and will therefore be considered with the tenth objection.

### Objection No. 3

■ The third objection is that the condemnation here sought is not within the terms and authorization of the federal statutes governing these matters. The Atomic Energy Act of 1946, by Section 13(b), 42 U.S.C.A. § 1813(b), gives the Atomic Energy Commission the power to acquire property by condemnation, under the general condemnation statute (40 U.S.C.A. § 257) and "any other applicable Federal statute". The latter phrase includes the Declaration of Taking Act, 40 U.S.C.A. §§ 258a–258f. The Government has proceeded here under both of these statutes, by the filing of a petition for condemnation setting forth the general purpose of the taking and the property to be taken, and of declarations of taking by the Atomic Energy Commission setting forth the elements required by 40 U.S.C.A. § 258a, and by the payment into the Registry of the court of the sums estimated to cover the just compensation to the property owners. This general objection to the lack of statutory authority for this proceeding is therefore overruled.

### Objections No. 4 and 5

The fourth objection is a specific one, alleging the lack of an appropriation Act necessary to sustain this proceeding. The fifth objection is substantially the same. The Government has moved to strike the latter objection, on the ground that it is based on the theory of a taxpayers suit to enjoin the expenditure of. public funds. I shall consider both objections together, and the motion to strike as though it were made to both.

■ A suit by a person in his capacity as a taxpayer to restrain the expenditure of federal funds cannot be maintained, since no taxpayer has sufficient interest in the aggregate amount of federal revenue to be damaged by the expenditure of a portion thereof. Massachusetts v. Mellon, 1923, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. The defendants, however, attempt to bring themselves under the rule of United States v. Butler, 1936, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, in which taxpayers were held to have sufficient interest to question the imposition of taxes on them and the expenditure thereof in pursuance of an unconstitutional plan to regulate a segment of the nation's economy.

I think that these defendants are not attempting to restrain the expenditure of federal funds within the meaning of Massachusetts v. Mellon; but it is also obvious that they are not in the position of taxpayers attempting to restrain the imposition of taxes on them in pursuance of an unconstitutional scheme, within the meaning of United States v. Butler. The federal statutes in both of these cases were attacked by taxpayers as beyond the powers granted the federal government by the Constitution. In the case at bar the defendants do not challenge the existence of the federal power of eminent domain, or the propriety of its use to acquire a site for the Argonne Laboratory, or the cc stitutionality of the Atomic Energy Act. The Government's motion to strike on the basis of the rule of Massachusetts v. Mellon, is therefore denied.

■ The defendants' real point in the fourth and fifth objections is that the money paid into the Registry of the court

was without the authority of an appropriation act. A similar situation was presented in Barnidge v. United States, 8 Cir., 1939, 101 F.2d 295, in which a property owner complained of the manner in which the funds available for paying him had been transferred for that purpose by executive order. The condemnation was not under the Declaration of Taking Act and the availability of funds was therefore not a condition precedent to the maintenance of the action because the Government would not acquire title until the compensation had been determined and paid. The court therefore said it was unnecessary to inquire into the manner in which the funds had been made available, but said further, 101 F.2d at page 298: "As a matter of practical fact, so far as this appellant is concerned, the funds are available, and it would not seem to be in his power to challenge the validity of the executive or legislative act by which he can not possibly be injured." The court cited Massachusetts v. Mellon, which is also authority for the more general proposition than the one heretofore discussed that a litigant will not be heard to complain of action which does not harm him.

█ In the oral argument, however, counsel for the defendants asserted that they would be harmed by anything less than payment in full for their property, that the amount paid into court may not cover in full the award that a jury might make for the value of their land, that they would then have only a judgment against the Government, and that just compensation under the Fifth Amendment does not mean a judgment which Congress may never honor. This argument in effect questions the constitutionality of the Declaration of Taking Act, which provides that the Government takes title to property immediately upon the filing of the declaration and the payment into court of the estimated value of the property taken. Long before the passage of the Declaration of Taking Act, the Supreme Court held that the Fourteenth Amendment is not violated by the provision of a state condemnation law authorizing the taking of possession prior to the final determination of the amount of compensation and the payment thereof, if adequate provision is made for compensation. Backus v. Fort Street Union Depot Co., 1898, 169 U.S. 557, 18 S.Ct. 445, 42 L.Ed. 853. The provision in the Declaration of Taking Act for the payment into court of the estimated value of the property sought to be condemned, and the provision that if just compensation as finally determined exceeds the amount deposited in court, judgment shall be entered against the United States for the deficiency at six percent interest from the date of the taking, have been held to be adequate provision for compensation. City of Oakland v. United States, 9 Cir., 1942, 124 F.2d 959, certiorari denied, 1942, 316 U.S. 679, 62 S.Ct. 1106, 86 L.Ed. 1753. Furthermore, unlike the type of condemnation in the Barnidge case, further protection is afforded property owners by the provision that the Government cannot abandon a condemnation under the Declaration of Taking Act, but must carry it through to completion, including the payment in full of the compensation ultimately awarded. Catlin v. United States, 1945, 324 U.S. 229, 241, 242, 65 S.Ct 631, 89 L.Ed. 911; 40 U.S.C.A. §§ 258c and 258e. I must therefore hold that the defendants' contentions going to the constitutionality of a Declaration of Taking Act condemnation have already been raised and decided adversely to them in the foregoing cases, which I regard as controlling here.

The defendants' argument on the meaning of the constitutional requirement of just compensation is more basic than their point concerning the lack of an appropriation to support this condemnation. I have digressed to discuss the constitutional issue because defendants' counsel raised it in the oral argument in support of his contention that the defendants were not within the rule of Massachusetts v. Mellon, since their interests were directly threatened by this proceeding. I now return to the defendants' fourth and fifth objections concerning the lack of an appropriation for this condemnation.

As a practical matter, inquiry into the lack of an appropriation has little relevance when based on the defendants' contention that their concern is the possibility of not receiving the full amount of an ultimate

award. For, regardless of the source of the money paid into court—whether by an administrative transfer or allocation of funds, or by a specific appropriation for the Argonne National Laboratory—if the amount now in court is insufficient to pay what a jury may ultimately award, the defendants will face the same problem, about which they profess to be concerned, of inducing the Government to honor the unsatisfied judgment.

Since the constitutional issue, on which rests the defendants' argument that they may be injured by this proceeding, has been resolved against them, and since under a practical view of the matter as set forth in the preceding paragraph, it is immaterial to the defendants' fear of having judgment unsatisfied whether the source of the money paid into court was the general funds of the Commission or a specific appropriation for the Argonne Laboratory, the issue raised by the fourth and fifth objections in the motion and traverse could be resolved against the defendants on the basis of the view in the Barnidge case heretofore quoted.

Apart from the constitutional issue and the defendants' fear of not receiving payment in full of an ultimate award, however, there remains the possibility that a specific appropriation is by statute a necessary element in the Government's right to condemn. Counsel for the Government argues that a specific appropriation is not needed to sustain a condemnation under the Declaration of Taking Act, if the Government agency has money available for immediate payment to property owners and has paid it into court; that in any event Public Laws 515 and 663 of the 79th Congress, Second Session, Act July 16, 1946 and Joint Resolution Aug. 8, 1946, 60 Stat. 541, 910, are a sufficient appropriation; and finally that under Section 13(b) of the Atomic Energy Act the Commission could take immediate possession of the property without the deposit of money in the Registry of the court as provided by the Declaration of Taking Act.

It is unnecessary to pass on the last ground advanced by the Government, since it has in fact proceeded under the Declaration of Taking Act by depositing in court the estimated compensation for the defendants.

The defendants' position is that 40 U.S.C.A. § 259 prohibits the payment of money or the making of contracts for the payment of money for any public building site in excess of the amount specifically appropriated therefor; that 40 U.S.C.A. § 263 provides that no act authorizing the purchase of a site and the erection of a building thereon shall be construed to appropriate money unless it contains express language appropriating money; and that 31 U.S.C.A. § 627 provides that no act shall be construed to make an appropriation, or to authorize the execution of a contract involving payment of money in excess of appropriations made by law, unless the act specifically declares that an appropriation is made or that a contract may be executed.

Public Law 515 is the Military Appropriation Act, 1947, and includes an appropriation of $375,000,000 for "atomic service", including "the acquisition of land or interest in land, construction, installation * * * and maintenance of buildings * * *". The Atomic Energy Act of 1946, transferring authority over the development and control of atomic energy to a civilian agency, was approved two weeks later. Public Law 663, the First Supplemental Appropriation Act, 1947, therefore provided for the Atomic Energy Commission by authorizing the President to transfer unexpended balances available to The Manhattan Engineer District (the military agency concerned with atomic development) to such agencies as he may determine for the purpose of carrying out the provisions of the Atomic Energy Act. It cannot therefore be said that the Commission has no authority to expend money for the acquisition of building sites.

I think that the three statutes cited by defendants provide standards of conduct binding on executive officers in the making of contracts and the spending of money. But these statutes are not jurisdictional, and do not affect the power of this court to proceed with a condemnation action. In condemnations not under the Declaration of Taking Act, it has been held that an act of Congress limiting the amount which could be spent on a project did not

affect the condemnation proceeding, which merely determines the compensation to which the property owner is entitled. If this amount exceeds the Congressional limit on the project, the executive and legislative branches have the option of abandoning the project or increasing the appropriation to cover the compensation due the property owner. Shoemaker v. United States, 1893, 147 U.S. 282, 302, 13 S.Ct. 361, 37 L.Ed. 170; United States v. Gettysburg Electric Ry. Co., 1896, 160 U.S. 668, 684, 16 S.Ct. 427, 40 L.Ed. 576; See also Danforth v. United States, 1939, 308 U. S. 271, 284, 60 S.Ct. 231, 84 L.Ed. 240; and Barnidge v. United States, supra, 8 Cir., 101 F.2d 295, at page 298, holding that a taking by eminent domain is not by contract or agreement and hence does not violate 16 U.S.C.A. sec. 462(d) which is similar in purpose to the three statutes relied on by defendants here.

By the Declaration of Taking Act, Congress, for the purpose of expediting building projects, gave the executive branch of the Government the power to bind the Government irrevocably by filing a declaration of taking and paying the amount of estimated compensation into court. If this procedure is inconsistent with the policy expressed in the statutes relied on by defendants, it merely represents the purpose of Congress to release the executive agencies from the restraints imposed by the aforesaid three statutes and allows them to pledge the faith of the Government to pay whatever amount is determined ultimately to be due the owners of the property taken.

However, section 3 of the Declaration of Taking Act, 40 U.S.C.A. § 258c, provides a limitation on the exercise of discretion by the executive agencies. This section provides that action under this act "shall not be taken unless the chief of the executive department or agency or bureau of the Government empowered to acquire the land shall be of the opinion that the ultimate award probably will be within any limits prescribed by Congress on the price to be paid".

Defendants' counsel made the point in the oral argument that it does not appear in the pleadings filed by the Government that the Atomic Energy Commission or its chairman was of the opinion that the amount of the ultimate award would probably be within any limits prescribed by Congress on the price to be paid.

Where Congress has prescribed any limits, this section is analogous to 40 U.S. C.A. § 259, one of the statutes cited by defendants, which limits executive agencies in paying or contracting for building sites to the amount specifically appropriated. But the term "any limits prescribed by Congress" has the meaning of "such limits as may be prescribed by Congress". It does not imply that Congress will or must prescribe limits on every specific building project undertaken by the Government. If Congress does provide specifically for each project, as appears to be its custom in post-office building appropriations, such limits bind the executive agency under both 40 U.S.C.A. § 259 and section 3 of the Declaration of Taking Act. But Congress can choose to authorize a land condemnation and building program in general terms and under a lump sum appropriation. In that situation section 3 of the Declaration of Taking Act is inapplicable. In any event, section 1 of the Act, 40 U.S.C.A. § 258a, does not require the expression of such opinion as a necessary element to be included in the declaration of taking. The mere filing of the action may be sufficient expression of such opinion, as the mere request to the Attorney General to file a condemnation action has been held to be a sufficient indication of an administrative finding of the necessity for the taking. See Old Dominion Land Co. v. United States, infra.

■ I conclude that the Commission is proceeding with the construction of the Argonne National Laboratory under a general grant of power from Congress and is authorized to spend money for that purpose under a lump sum appropriation; that no specific appropriation for this particular project is necessary; that Congress need not provide limits on the amount to be spent on land for a specific project under the Declaration of Taking Act; that if Congress does provide such limits, the requirement of an administrative opinion that the amount of an ultimate award will

246

probably be within such limits is met by the request of the agency to the Attorney General to file these proceedings. The fourth and fifth objections are therefore overruled.

### Objection No. 6

Under the sixth objection of the traverse, the defendants assert that the Commission has already acquired land in the neighborhood in excess of its needs and has been unable to pay for all of such land, that the sums deposited in court are insufficient to permit these defendants to replace the properties here sought to be taken, that compensation is not "just" within the meaning of the Fifth Amendment if it is not paid promptly, and that there is no reasonable, certain and adequate provision for the defendants to obtain compensation before their occupancy is disturbed.

Insofar as this objection is concerned with the amount of land needed by the Commission, it goes to the good faith of the Commission in exercising the power of eminent domain and therefore will be considered with the tenth objection. The allegations concerning the Commission's inability to pay other landowners in the neighborhood for their land are not relevant to this proceeding, since the money to pay these defendants is in the possession of this court. If this sum should prove to be insufficient to cover the amount of the ultimate award to defendants, this court must assume that the executive and legislative branches of the Government will promptly and faithfully pay the balance of such award. The judiciary is not the sole repository of the conscience of the Federal Government. The possibility that the amount paid into court may not cover in full the ultimate determination of the value of the property taken has been held not to render the Declaration of Taking Act unconstitutional. City of Oakland v. United States, supra. For it is also possible, on the other hand, that on a declaration of taking the amount deposited in court and paid the property owners may exceed the amount of the ultimate award, and the Government will then be entitled to a judgment of restitution for the excess. See United States v. Miller, 1943, 317 U.S.

369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

The good faith issue of this objection will, as above stated, be considered with the tenth objection. As to the other issues, the Government's motion to strike Objection No. Six of the traverse is granted.

### Objections No. 7 and 8

The seventh and eighth objections also allege that the Commission does not need the land of these defendants. They therefore constitute an allegation of lack of good faith and will be considered with the tenth objection. The Government's motion to strike is therefore denied.

### Objection No. 9

The ninth objection is that the Commission has made no finding that the property of these defendants is necessary to the establishment of the Argonne National Laboratory as alleged in paragraph III of the petition for condemnation. The defendants argue that an administrative agency exercising the eminent domain power is subject to the ordinary rule that it must make findings of fact bringing its action within the statute from which it derives its authority, citing Panama Refining Co. v. Ryan, 1934, 293 U.S. 388, 432, 55 S.Ct. 241, 79 L.Ed. 446, and Florida v. United States, 1931, 282 U.S. 194, 206, 51 S.Ct. 119, 75 L.Ed. 291. These cases involved administrative regulations of interstate commerce under delegated legislative power. The fact that Congress in delegating legislative power to regulate commerce must prescribe the standards by which the administrative agency is to be guided, and that the administrative agency must make findings of fact essential to its exercise of the delegated power, is not material here. The exercise of the eminent domain power is not analogous to the exercise of the power to regulate commerce. In Bragg v. Weaver, 1919, 251 U.S. 57, 58, 40 S.Ct. 62, 63, 64 L.Ed. 135, the Supreme Court declared: "Where the intended use is public, the necessity and expediency of the taking * * * are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment."

If a hearing is not essential, it follows that the making of detailed findings of fact is likewise not essential. The mere filing of a petition for condemnation is a sufficient indication of an administrative finding of necessity. In Old Dominion Land Company v. United States, 1925, 269 U.S. 55, 66, 67, 46 S.Ct. 39, 40, 70 L.Ed. 162, Mr. Justice Holmes speaking for the Court declared: "Some question is made as to whether a letter from the Secretary of War to the Attorney General sufficiently authorized the present proceedings by showing that in his opinion it was necessary or advantageous to the Government to take them. The Act of August 1, 1888, c. 728, 25 Stat. 35, [40 U.S.C.A. § 257], allows the Secretary to acquire by condemnation lands which he is authorized to procure for public purposes, 'whenever in his opinion it is necessary or advantageous to the Government to do so'; gives jurisdiction to the courts of the United States, and makes it the duty of the Attorney General upon every application of such officer to cause proceedings to be commenced. We perceive no requirement that the Secretary should go further than to apply to the Attorney General."

The ninth objection is therefore overruled.

### Objection No. 10

The tenth objection, and all or portions of the second, sixth, seventh, and eighth objections in defendants' traverse, allege that this condemnation was not undertaken in good faith. Defendants rely on United States v. Carmack, 1946, 329 U.S. 230, 67 S.Ct. 252 and United States v. Meyer, 7 Cir., 1940, 113 F.2d 387, certiorari denied 1940, 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459, for the proposition that a court may inquire into the good faith of the agency exercising the power of condemnation.

The Carmack case, however, is not authority for this proposition. It is true that there the District Court took voluminous evidence on this question, and concluded that the condemnation should be denied as capricious and arbitrary. The Supreme Court reversed the judgment on the ground that the District Court was merely substituting its discretion for that of the officials charged with the selection of a site. The Supreme Court said at pages 242, 243 of 329 U.S., at page 258 of 67 S.Ct.: "The judgment exercised by the designated officials in selecting this site out of 22 sites suggested, and out of two closely balanced alternatives, constituted an administrative and legislative decision not subject to judicial review on its merits."

On the question of judicial review of good faith, the Court said at page 243, of 329 U.S., at page 258 of 67 S.Ct.: "In this case, it is unnecessary to determine whether or not this selection could have been set aside by the courts as unauthorized by Congress if the designated officials had acted in bad faith or so 'capriciously and arbitrarily' that their action was without adequate determining principle or was unreasoned."

The Court reached this conclusion on the basis of the record made in the District Court which showed the care with which the site had been finally selected. But the Supreme Court thus specifically left open the question whether the District Court could have refused to order the condemnation if the record showed bad faith. It follows that the additional question is also open whether the District Court should even have allowed the introduction in evidence of the reasons for the selection of the site.

The Meyer case, on the other hand, stated that the conditions for the exercise of the eminent domain power were the payment of just compensation and good faith on the part of the agency seeking to take the property. But our Circuit Court of Appeals did not state what it meant by good faith, nor with respect to what aspect of a condemnation proceeding it would require good faith. In the instant case, the defendants challenge the Commission's good faith only with respect to the selection of a site and to the area sought to be condemned; they do not, for example, assert that their land will in fact be used for another purpose than the building of a laboratory for atomic research.

The cases cited in the Meyer case by our Circuit Court of Appeals, in the context in which it referred to good faith as

a necessary condition for a taking by condemnation, do not, with one exception, mention good faith. Rindge Co. v. County of Los Angeles, 1923, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186, held that the taking was for a public use, that the necessity for the taking is a legislative question, and that no hearing on that question is necessary as a matter of due process. To the same effect are Joslin Mfg. Co. v. City of Providence, 1923, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167, and Sears v. City of Akron, 1918, 246 U.S. 242, 38 S.Ct. 245, 62 L.Ed. 688. Bragg v. Weaver, 1919, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135, held that where adequate provision is made for the payment of compensation without unreasonable delay, the fact that the taking precedes the determination of the just compensation due the owners does not violate due process. Shoemaker v. United States, 1893, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170, which stated that the extent to which property shall be taken for a public use is a legislative question, is chiefly significant at this point for the striking similarity in the language used by the Supreme Court and by the Circuit Court of Appeals in the Meyer case, showing the addition by the Court of Appeals of the good faith element in the Meyer case. In the Shoemaker case, the Supreme Court declared (147 U.S. at page 298, 13 S.Ct. at page 390) that the cases establish the proposition, among others, "that the extent to which such property shall be taken for such use rests wholly in the legislative discretion, subject only to the restraint that just compensation must be made". In the Meyer case, the Circuit Court of Appeals declared (113 F.2d at page 392) with reference to the determination of the extent, amount or title of property to be taken: "The decision as to such questions rests wholly in legislative discretion, subject only to the restraints that just compensation must be paid and the determination made in good faith". It is thus apparent that the Circuit Court of Appeals added the requirement of good faith to a clause taken verbatim from the Supreme Court's opinion in the Shoemaker case. In United States v. Gettysburg Electric Ry. Co., 1896, 160

U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576, the issue was whether the taking was for a public use, which is a judicial question; but the use having been determined to be a public use, the Court said that the quantity of land to be taken is a legislative question. Barnidge v. United States, 8 Cir. 1939, 101 F.2d 295 implies that a court may consider whether the act of a government officer in undertaking to condemn property is an abuse of the power granted him by statute. But this is only another way of stating the principle that a court may examine whether the taking is for a public purpose within the meaning of the act under which the condemnation is sought. The issue before that court was whether condemnations under the Historic Sites Act, 16 U.S.C.A. § 461 et seq., were strictly limited to the preservation of historic buildings.

United States v. Threlkeld, 10 Cir., 1934, 72 F.2d 464, 465, is the only case cited in the Meyer case which mentions good faith. The court stated the general principle that it could determine whether the proposed use is public or private, and added, "but, in the absence of bad faith, and if the use is a public one," the necessity or expediency of appropriating property is a legislative question not for judicial determination.

If the court in the Threlkeld case had not stated good faith and public use as coordinate conditions, the good faith problem could be understood as an aspect of the public use inquiry which is a judicial question. Although not essential to this decision, it should be noted that even the judicial power to inquire into the public use question has been placed in doubt by recent decisions. See United States v. State of New York, 2 Cir., 1947, 160 F.2d 479, certiorari denied 1947, 331 U.S. 832, 67 S. Ct. 1512. If a taking is for a use not authorized by statute, as the contention was made in the Barnidge case, it may be said to be a taking in bad faith. Or if the taking authorized by statute is for a use which a court will declare to be essentially a taking from some private owners for the benefit of other individuals, the court will declare the proposed taking is not for a public use. The use of the eminent domain power

in connection with public housing legislation has been attacked on this basis. See Public Housing in Illinois, 8 U. of Chi.L. Rev. 296, at 298, 302, 316. As in the case of a taking not within prescribed statutory purposes, a taking for a use not within the constitutional powers of government may be said to be in bad faith. But see United States ex rel, Tennessee Valley Authority v. Welch, 1946, 327 U.S. 546, 552, 66 S.Ct. 715, 90 L.Ed. 843. These types of bad faith, however, are not malevolent, and do not seem to be what was meant in the Threlkeld case.

Reference to the cases cited in the Threlkeld case is not helpful. In addition to the Gettysburg Electric Railway and Rindge cases, discussed previously in connection with the Meyer case, the court in the Threlkeld case relied on Hairston v. Danville and Western Ry. Co., 1908, 208 U.S. 598, 28 S.Ct. 331, 52 L.Ed. 637, 13 Ann.Cas. 1008, in which the issue was whether the taking was for a public or private use, and Cincinnati v. Vester, 1930, 281 U.S. 439, 50 S.Ct. 360, 74 L.Ed. 950, in which the issue was whether the taking was for a public use within the state statute.

So far as the precedents are concerned, the status of good faith as a condition of a taking by condemnation is therefore doubtful. The United States Supreme Court specifically left the question open in the Carmack case. Our Circuit Court of Appeals in the Meyer case, apparently quoting the language of the Supreme Court in the Shoemaker case, appended the requirement of good faith to the Supreme Court's statement which said that the requirement of just compensation was the "only" restraint on the extent to which property may be taken for a public purpose. The Threlkeld case also mentioned the requirement of good faith, but without support in the authorities which it cited, except insofar as a taking not for a public purpose can be said to be not in good faith.

The Meyer case, however, is the law of this circuit. Furthermore, I assume a priori that the question of bad faith on the part of government officers can be raised in a judicial proceeding. For this reason,

the Government's motion to strike the tenth objection, and all or portions of the second, sixth, seventh and eight objections on the good faith issue is denied.

None of the foregoing cases, however, is explicit as to the meaning of bad faith. In the law of torts bad faith can mean either the mere lack of legal excuse or an actual malevolent purpose. As a restraint on the power of eminent domain, apart from the public use inquiry which goes to the lack of legal excuse for the taking, I think that bad faith means actual malevolence toward the complaining defendants by government officers under the color of a lawful condemnation. It does not mean merely poor judgment or careless planning in the selection of a site.

The defendants' factual allegations which they sought to prove, by the taking of depositions of members of the Atomic Energy Commission are that a better site for the Laboratory is its present site in the Palos Forest Preserve, that the Commission preferred the Palos site, that political considerations led the Commission not to begin condemnation proceedings against the Forest Preserve District of Cook County for that site, and that the site selected in Du Page County was only a secondary choice. These are matters going only to the exercise of discretion by administrative agencies. Political considerations of comity are a proper part of the discretion allowed the executive branch of the Government. Which site is better is an engineering, not a judicial question. Even if it should be proved from the records and testimony of the Commission that the site selected was not its first choice, such proof would not constitute proof of bad faith. This was the situation in United States v. Carmack, supra, 329 U.S. 230, at pages 244, 245, 67 S.Ct. 252, in which court declared that the record presented no issue of capricious and arbitrary action. There is nothing in the allegations of these defendants indicating actual malevolence, or spite, directed toward them by the Commission and being its real reason for taking their land. They are only asking this court to substitute its opinion on the matter of site selection for that of the Commission.

The tenth objection, and all or portions of the second, sixth, seventh and eighth objections considered herewith, are therefore overruled.

### Objection No. 11

The eleventh objection of the defendants' traverse is that this condemnation is an attempt to take property without due process of law and contrary to the Fifth Amendment. This argument has been considered at length in prior sections of this memorandum, and is overruled.

### Objection No. 12

■. The twelfth objection is that the propriety of this taking has not been determined by Congress, and that the petition for condemnation was filed on July 25, 1947 to circumvent an investigation of this site by a subcommittee of the Joint Committee on Atomic Energy of the Congress. As in all condemnations, the Commission is exercising legislative power duly delegated to it by Congress. It was not contemplated by Congress that it should pass on such questions. Furthermore, it should be noted that in the long delay to which this condemnation has been subjected, it does not appear that the subcommittee has taken any action, or has reached any contrary conclusion, regarding the site for the Argonne Laboratory. The Government's motion to strike the twelfth objection is therefore granted.

All the issues raised by the defendants' motion and traverse, and by the Government's motion to strike, have thus been disposed of by the Court as a matter of law.

The legal defenses relied on by the defendants, and the ultimate facts which they sought by deposition to support such defenses, are not sufficient to constitute a bar to this proceeding. The defendants' motion to resume the taking of depositions is therefore denied.

The Government is directed to prepare judgment on the declarations of taking and to submit the same to Counsel for defendants for approval as to form and then to the Court for entry.